CALDWELL v. STATE OF INDIANA, EX REL. FELKER.

[No. 23,444. Filed June 27, 1918. Rehearing denied November 19, 1918.]

1. COMMERCE.—*Oil Inspection.—Excessive Fees.*—Section 5 of the act of 1901, regulating the inspection of petroleum products, Acts 1901 p. 516, §7888 *et seq.* Burns 1914, is objectionable as placing a burden on interstate commerce, since it provides for the collection of fees in excess of the amount necessary for the proper enforcement of inspection. p. 619.

2. STATUTES.—*Construction.—Invalidity in Part.*—Where a statute is void in part, it will not be declared void in its entirety unless all the provisions are connected in subject-matter, dependent upon each other and designed to operate for the same purpose, or are otherwise so dependent in meaning that it cannot be presumed that the legislature would have passed one without the other. p. 620.

3. STATUTES.—*Construction.—Partial Invalidity.*—Constitutional and unconstitutional provisions may be expressed in the same section, or even in the same sentence, and yet be perfectly distinct and separable, so that the first may stand though the last fall. p. 620.

4. STATUTES.—*Construction.—Partial Invalidity.*—Where the unconstitutional part of a statute and the remaining parts thereof are so mutually dependent as to warrant the belief that they were intended as a whole, and that the legislature would not have passed the residue independently of that which is void, the whole act must fall. p. 621.

5. STATUTES.—*Construction.—Partial Invalidity.*—The act of 1901 p. 516, §7888 *et seq.* Burns 1914, is comprehensive in scope and purports to provide a complete and independent system for the inspection and sale of oil and other petroleum products, and provides that after the time specified for its taking effect "all laws or parts of laws in conflict herewith, and all laws * * * regulating the inspection of petroleum oil, or petroleum products * * * are hereby repealed"; hence the legislative purpose was to substitute for the old law (Acts 1881 p. 571, §6996 *et seq.* Burns 1894; Acts 1891 p. 29, §6997 Burns 1894) a new and complete system of oil inspection and, under the provisions of the repealing clause, no law remains to which reference might be made to replace §5, which is unconstitutional, and, as the act including the repealing clause cannot be made operative, the whole act must fall. p. 621.

6. QUO WARRANTO.—*Person Entitled to Relief.*—Since the act of 1901 relative to oil inspection (Acts 1901 p. 516, §7888 *et seq.* Burns 1914) is void, the relator, who was appointed as state supervisor of inspection by the state geologist, under Acts 1881 p. 29, §6996 *et seq.* Burns 1894, as amended by Acts 1891 p. 571, §6997 Burns 1894, has such an interest in the office as to entitle him to bring *quo warranto* against one appointed under the act of 1901. p. 622.

From Marion Superior Court (a 221) ; *Clarence E. Weir*, Special Judge.

Quo warranto by the state, on the relation of Adam H. Felker, against Marion Caldwell. From a judgment for relator, the defendant appeals. *Affirmed.*

*Ele Stansbury*, Attorney-General, *John F. Robbins* and *U. S. Lesh*, for appellant.

*Myers, Gates & Ralston* and *Charles E. Cox*, for appellee.

SPENCER, J.—The general assembly of 1881 passed an act which provided for the inspection of all kinds of oil used for illuminating or combustive purposes and for regulating the sale and use of said oil within the state. Acts 1881 p. 571, §6996 *et seq.* Burns 1894. Under this act, which was comprehensive in scope, the Governor was authorized to appoint a state inspector of oils to administer the various provisions of the law and to perform the duties therein required of him. In 1891 the office of state supervisor of oil inspection was created by legislative enactment, and the duty of administering the laws relative to oil inspection was placed on that officer. Acts 1891 p. 29, §6997 Burns 1894. Provision was made for the appointment of the supervisor by the state geologist, and the office of state inspector of oils was abolished. In 1901 the general assembly passed an act "regulating the inspection of oil and other petroleum products, providing penalties for its violation, and repealing all former laws and laws in conflict therewith."

Acts 1901 p. 516, §7888 *et seq.* Burns 1914.  The duty of administering this law was placed on an officer also designated as the state supervisor of oil inspection, and provision was made for his appointment by the Governor.

On June 22, 1917, appellant was named by the Governor of the state to hold the office of supervisor under the act of 1901, and entered on the discharge of the duties therein required of that officer.  On July 2, 1917, the relator in this action was duly appointed by the state geologist to act as state supervisor of oil inspection under the acts of 1881 and 1891, *supra,* and entered on the discharge of his duties in that capacity. This action, in *quo warranto,* was instituted by the relator in order to determine who is entitled to the office in question, and the decision of that issue rests on the validity or invalidity of the act of 1901, *supra.*

Section 5 of that act provides a schedule of fees to be collected by the supervisor or his deputies from the person or persons at whose request each inspec-
1.  tion of oil is made.  Fifty per cent. of such fees is to be retained by the inspector as compensation for services rendered, and the remaining fifty per cent. is to be turned over to the state treasurer as a part of the general revenue.  The contention is made that, inasmuch as §5, on its face, provides for the collection of fees in excess of the amount necessary for the proper enforcement of the inspection law, it is, in part, a revenue measure and in violation of certain provisions of the state and federal Constitutions relative to uniform taxation and due process of law, and particularly objectionable as placing a burden on interstate commerce. The latter contention is fully sustained by the decision in *D. E. Foote & Co.* v. *Stanley* (1914), 232 U. S. 494, 505, 34 Sup. Ct. 377, 58 L. Ed. 698, and need not be discussed at length.  In this connection, see, also, *Castle* v.

*Mason* (1915), 91 Ohio St. 296, 307, 110 N. E. 463, Ann. Cas. 1917A 164; *Bartels Northern Oil Co.* v. *Jackman* (1915), 29 N. D. 236, 252, 150 N. W. 576; *Foote* v. *Clagett* (1911), 116 Md. 228, 241, 81 Atl. 511.

The decision in the case last cited is authority here for the holding that, as §5 of the act of 1901, *supra,* is unconstitutional as to oil and petroleum products transported into the state from other points, it must be held void as to oil produced and sold within the state, since the legislature will not be presumed to have intended to discriminate against citizens of Indiana in favor of those beyond its limits. Inasmuch as §5 must be held invalid for the reasons just stated, we need not determine whether it violates the Constitution of this state. In fact, appellant does not seriously contend that said section is valid in all its provisions, but asserts that if, for the purposes of argument, its invalidity be assumed, the remaining sections of the act of 1901 may be upheld and reference had to the act of 1881 for the schedule of fees to be exacted for the inspection of oil.

There can be no doubt that: "Where a part only of a statute is unconstitutional, and therefor void, the remainder may still have effect under certain conditions. The court is not warranted in declaring the whole statute void unless all the provisions are connected in subject-matter, depend on each other, were designed to operate for the same purpose, or are otherwise so dependent in meaning that it cannot be presumed that the legislature would have passed one without the other. The constitutional and unconstitutional provisions may even be expressed in the same section, or even in the same sentence, and yet be perfectly distinct and separable, so that the first may stand though the last fall. The point or test is not whether they are contained in the same section, for the distribution into sections is purely artificial, but

whether they are essentially and inseparably connected in substance." 1 Lewis' Sutherland, Statutory Construction (2d ed.) §296. See, also, *State, ex rel.* v. *Blend* (1890), 121 Ind. 514, 521, 23 N. E. 511, 16 Am. St. 411.

On the other hand, it is equally well settled that: "Where a part of a statute is unconstitutional, if such part is so connected with the other parts as that 4. they mutually depend upon each other as conditions, considerations or compensations for each other, so as to warrant the belief that the legislature intended them as a whole, and if they could not be carried into effect the legislature would not have passed the residue independently of that which is void, then the whole act must fall." *State, ex rel.* v. *Blend, supra,* 521. See, also, *Board, etc.* v. *Knight* (1917), *ante* 108, 117 N. E. 565, 571; *State, ex rel.* v. *Fox* (1901), 158 Ind. 126, 130, 63 N. E. 19, 56 L. R. A. 893.

The act of 1901 is comprehensive in scope and purports to provide a complete and independent system for the inspection and sale of oil and other petroleum 5. products within the state. To a considerable degree it is a substantial re-enactment of the law of 1881, with such principal changes as appear to have been suggested by the increased use of such products and by the evident purpose to provide an additional revenue to the state. The act expressly provides that: It "shall take effect and be in force from and after January 1, 1903, after which said date all laws or parts of laws in conflict herewith, *and all laws providing for, and regulating the inspection of petroleum oil, or petroleum products, used for illuminating purposes in this state, are hereby repealed."* (Our italics.) It was thus clearly the legislative purpose to substitute for the old law a new and complete system of oil inspection and, under the provisions of the repealing clause, no law

would remain to which reference might be had to replace an invalid section. Appellant bases his right to the office in question on the provisions of §3 of the act of 1901, which provide for the appointment of the supervisor by the governor and, further, that his salary shall be paid out of the state treasury, although the services of that officer had previously cost the state nothing. It is inconceivable that this provision would have been enacted by the legislature except on the theory that the returns to the state treasury, under the provisions of §5, would provide a sufficient revenue to meet the necessary appropriations for the department of oil inspection. In brief, we are forced to the conclusion that, with §5 eliminated, the act of 1901 cannot be made operative, and that the entire act, including the repealing clause, must therefore be governed by the rule that where valid and invalid provisions of an enactment are so connected one with the other that it is apparent that the legislature would not have passed the act, except as a whole, the entire statute must fall. This leaves the act of 1881 in force, except as amended and modified by the act of 1891, and the relator's appointment to the office of state supervisor of oil inspection, under the provisions of the latter enactment, must be upheld. He has such a property right in the office as entitles

6. him to bring this action (*City of Madison* v. *Korbly* [1869], 32 Ind. 74), and that right has been established. Our conclusions, in their substance, serve to dispose of the vital issues presented and require an affirmance of the judgment below.

Judgment affirmed.

NOTE.—Reported in 119 N. E. 999. Statutes: partial invalidity, construction, Ann. Cas. 1916D 9, 36 Cyc 976.