### Felker et al. v. Caldwell.

[No. 23,377. Filed June 25, 1919.]

1. Officers.—*Claim to Office.*—*Injunction.*—Where the title to an office is clearly an unsettled question, a claimant to the office may be enjoined by one occupying the office under a claim of right until the former shall have established his title in an action at law. p. 366.

2. Constitutional Law.—*Statutes.*—*Validity.*—*Presumption.*— An act of the legislature which has not been judicially declared unconstitutional or invalid is presumed to be a valid law. p. 367.

3. Officers.—*De Facto.*—*Election under Invalid Act.*—One who is elected or appointed to an office under an unconstitutional statute, before such statute is adjudged to be so, is an officer de facto. p. 367.

4. States. — *State Statute.* — *Validity.* — *State Question.* — Whether an act of the state legislature is inhibited by the state Constitution is a state and not a federal question. p. 367.

5. States.—*Statute.*—*Interference With Interstate Commerce.*— *Effect of Federal Decision.*—An appointee of the Governor to the office of state supervisor of oil inspection, under Acts 1901 p. 516, §7890 Burns 1914, was not affected as to his title to such office by a decision of the federal court holding such act invalid as a revenue measure as to interstate shipments of oil. p. 368.

6. Officers.—*De Facto.*—*Right to Injunctive Relief.*—Under Acts 1901 p. 516, §7890 Burns 1914, relative to oil inspection and the appointment of a supervisor thereof, though the duties

of such supervisor were extended and the mode of compensation was changed from a fee to a salary basis, the duties of the office were not so materially changed as to create a different office from that provided in the previous acts of 1881 and 1891 on the same subject; and the Governor's appointment of such inspector under the 1901 act was an appointment to an existing office and constituted the appointee, at least, a *de facto* officer, and a *de jure* officer if the act of 1901 was valid; hence such appointee was entitled to injunctive relief against a rival claimant, appointed by the state geologist under the act of 1891, who was interfering with the duties of the office. p. 369.

From Marion Circuit Court, (28,049); *Louis B. Ewbank*, Judge.

Action by Marion Caldwell against Adam H. Felker and others. From a judgment for the plaintiff, the defendant appeals. *Affirmed.*

*Myers, Gates & Ralston* and *Charles E. Cox*, for appellant.

*Ele Stansbury*, Attorney-General, *U. S. Lesh* and *John F. Robbins*, for the state.

MYERS, J.—On July 7, 1917, appellee brought this suit against appellants, Felker and his deputies, and thereafter such steps were taken and proceedings had that a temporary injunction was granted enjoining the appellants and all other persons assuming to act as deputies, or otherwise, from in any manner interfering with appellee as state supervisor of oil inspection, or his deputies in the discharge of their duties, "until such time as it shall first be established by the adjudication of a competent tribunal that said Adam H. Felker had a superior title to the said office of State Supervisor of Oil Inspection, or until the further order of this court." It further appears that appellee on June 22, 1917, was appointed by the Governor of the State of Indiana, state supervisor of oil inspection under the provision of an act of the general assembly approved

March 11, 1901. Acts 1901 p. 516, §7890 Burns 1914. He thereupon gave bond and qualified as required by law. On July 2, 1917, appellant Felker was appointed by the state geologist as state supervisor of oil inspection under the provisions of an act of the legislature. Acts 1891 p. 29. Felker gave bond and qualified as required by the law under which he claims to act, appointed deputies throughout the state, and proceeded to take steps to enforce the law relating to the inspection of oil, etc.

The errors here assigned on the rulings of the trial court challenge the legality of the order of the trial court granting a temporary injunction.

Appellants insist that a court of equity is without jurisdiction to grant injunctive relief in a case where it clearly appears that the real controversy involves the title to a public office. Appellee takes the position that by virtue of his appointment and commission he was a *de facto* officer acting under color of authority, and as such officer he was entitled to have the *status quo* preserved as against an adverse claimant who was interfering with him in the performance of the duties of such office, until such time as the title thereto could be determined in a proper proceeding for that purpose.

Appellants' insistence is not well taken for the reason that the title to the office of state supervisor of oil inspection was clearly an unsettled question, and

1. in such cases one claimant to the office may be enjoined by one occupying the office under a claim of right until the former shall have established his title in an action at law. *Parsons* v. *Durand* (1897), 150 Ind. 203, 49 N. E. 1047; *Brady* v. *Sweetland* (1874), 13 Kan. 41; *State, ex rel.* v. *Superior Court* (1897), 17 Wash. 12, 48 Pac. 741, 61 Am. St. 893; *Reemelin* v. *Mosby* (1890), 47 Ohio St. 570, 26 N. E. 717; *Rhodes* v. *Driver* (1901), 69 Ark. 606, 65 S. W.

106, 86 Am. St. 215; *Stenglein* v. *Saginaw Circuit Judge* (1901), 128 Mich. 440, 87 N. W. 449; *Guillotte* v. *Poincy* (1889), 41 La. Ann. 333, 6 South. 507, 5 L. R. A. 403; 2 Joyce, Injunctions §1380; 2 High, Injunctions (4th ed.) §1315.

In this state public offices are either constitutional or legislative. In this case the office in question is not a constitutional one; consequently it must be one created by the legislature or none exists. However, the power of the legislature to create it is not questioned, nor is there any constitutional objection urged.

In considering the questions here presented, the circumstances existing at the time the trial court gave its decision must not be overlooked. With this observation in mind, it will be seen that at that time the act of 1901, *supra,* was on our statute books, and presumably a valid law. *State, ex rel.* v. *Billheimer* (1912), 178 Ind. 83, 96 N. E. 801; *Hanly* v. *Sims* (1910), 175 Ind. 345, 93 N. E. 228, 94 N. E. 401; *Cincinnati, etc., R. Co.* v. *McCullom* (1915), 183 Ind. 556, 109 N. E. 206, Ann. Cas. 1917E 1165. At least, if it was unconstitutional or invalid for any reason, it was not so judicially declared.

This court in the case of *Parker* v. *State* (1893), 133 Ind. 178, 200, 32 N. E. 836, 33 N. E. 119, 18 L. R. A. 567, said: "It seems to be well settled that one who is elected or appointed to an office under an unconstitutional statute, before it is adjudged to be so, is an officer *de facto*."

Appellee was appointed and qualified under the act of 1901. This act for more than sixteen years was acquiesced in by all parties concerned as well as the public generally. True, on June 27, 1917, the District Court of the United States for the District of Indiana, on the ground that the act of

1901 was a revenue measure, enjoined appellee 5. from inspecting and interfering with oils which were interstate shipments.    However this may be, the question of the validity of the act under which appellee was appointed was not then pending before, or determined by, any court of this state, nor had this court passed on the effect of the federal court decision. We take it for granted that the federal court did not pass on the question as to whether or not the act was inhibited by our state Constitution.    That is a state question.   *Ex Parte Spencer* (1912), 228 U. S. 652, 664, 33 Sup. Ct. 709, 57 L. Ed. 1010.    While the decision of the federal court had the effect of excluding interstate shipments of oil from the operation of certain provisions of the statute under which appellee was acting, yet it is not our understanding that such decision in any wise affected appellee's title to the office of state supervisor of oil inspection.    The question of title to the office is not here involved, and will not be considered as a question presented by this record.   *Parsons* v. *Durand, supra.*

In 1881 (Acts 1881 p. 571), a general law on the subject of inspection of oils was enacted, and the Governor was thereby authorized to appoint for the term of two years a suitable person with certain specific qualifications to perform the duties required by that act. ' In 1891 (Acts 1891 p. 29), the general assembly expressly created the office of state supervisor of oil inspection, prescribed the duties thereof, fixed the compensation of such officer, and abolished the office known by the act of 1881 as state inspector of oils, and gave the appointive power to the state geologist, who was authorized to fill the office by appointment for a term of four years.    This enactment was challenged and held valid by this court in the case of *State, ex rel.* v. *Hyde* (1891), 129 Ind. 296, 28 N. E. 186, 13 L. R. A. 79.

Looking to the law in force in 1891, on the subject now being considered, it will be seen that the two acts— 1881 and 1891—together furnished the law at that time in this state on the subject of oil inspection. That law for a period of ten years thereafter was enforced by an officer characterized as "state supervisor of oil inspection."

The 1901 act, *supra,* was entitled "An Act regulating the inspection of oils and other petroleum products, providing penalties for its violation and repealing all former laws, and laws in conflict therewith." This act, as its title indicates, has reference to the manner of inspecting oils and other petroleum products only. It has no provision expressly creating an office, but provides that such inspection as therein designated shall be made by the state supervisor of oil inspection, an office theretofore created by positive legislative action, and at that time being administered by an incumbent who, so far as it appears from this act, was to continue in office until January 1, 1903, when by the provisions of this act the Governor was to appoint his successor and every four years thereafter. Under this act, the duties of the state supervisor of oil inspection were not materially different from those required of this officer under the act of 1881, except that his duties were extended to include the inspection of gasoline, petroleum-ether, or similar or like substances under whatever name called.

Under the former acts this officer was compensated by fees collected from those requiring his services, while in the 1901 act he received a salary of $2,500 per year to be paid out of the state treasury. His salary since 1903 has been by the appropriation act increased to $3,500 per year, with an addition of $600 for office expenses, and in 1915 the legislature appropriated

6.

$500 for office expenses, $500 for traveling expenses, and $900 for clerk hire. Acts 1915 p. 349. A minor change was made in the appointment of deputies who were to receive only one-half of the fees provided for inspection, and the other one-half was to be paid to the state treasury for the benefit of the general fund of the state. Appellant calls our attention to these changes, and insists that they tend to show that the general assembly in passing this last act contemplated, and intended to create, another and different office from that created by the act of 1891. We are not convinced that this act should be so construed. We are not prepared to say that a mere change in compensating this officer from a fee basis to a salary basis is sufficient to create a new office, but, on the contrary, we are persuaded that the legislature, in re-enacting the act of 1881 relative to the duties of the inspecting officer and method to be followed by him in inspecting oil, gasoline, petroleum-ether and other petroleum products, and providing that the state supervisor of oil inspection shall perform these duties, did intentionally recognize the office created by the act of 1891 as an existing office, so that when the Governor of this state appointed appellee as the successor of the resigned incumbent, as shown by this record, the appointment was to a legally existing office, and appellee's possession of the books, papers and paraphernalia of the office under his appointment made him a *de facto* officer at least, and a *de jure* officer in case the act under which he received his appointment was valid. So that therefore when the proceedings in this case brought to the attention of the trial judge, acting as a chancellor, a state of facts showing an existing office with two claimants, one in possession performing the duties of the office, claiming his authority to act under an appointment authorized by the law not judicially declared invalid, and the other claiming the

right to administer the affairs of the same office by virtue of his appointment under another law, a *de facto* officer was shown on the part of the former entitling him to injunctive relief. *Johnston* v. *Jones* (1872), 23 N. J. Eq. 216.

In *Carleton* v. *People* (1862), 10 Mich. 249, it is said: "All that is required when there is an office, to make an officer *de facto,* is, that the individual claiming the office is in possession of it, performing its duties, and claiming to be such officer under color of an election or appointment, as the case may be. It is not necessary his election or appointment should be valid, for that would make him an officer *de jure.*" In the case of *Erwin* v. *Jersey City* (1897), 6 N. J. Law 141, 144, 37 Atl. 732, 733, 64 Am. St. 584, it is said: "When an official person or body has apparent authority to appoint to public office, and apparently exercises such authority, and the person so appointed enters upon and performs the duties of such office, his acts will be held valid in respect to the public, whom he represents, and to third persons, with whom he deals officially, notwithstanding there was a want of power to appoint him in the person or body which professed to do so." See, also, *Ex Parte Parks* (1880), 3 Mont. 426, 428, 430; *Buck* v. *Hawley* (1906), 129 Iowa 406, 408, 105 N. W. 688.

Since the submission of this cause, the act of 1901 has been held invalid by this court in the case of *Caldwell* v. *State, ex rel.* (1918), 187 Ind. 617, 119 N. E. 999. That case was a proceeding in *quo warranto* to try the title to the office of state supervisor of oil inspection, wherein it was held that the act of 1881 is in force except as amended and modified by the act of 1891.

The question involved in this latter case was clearly for the law side of the court. When the question thus

Felker *v.* Caldwell—188 Ind. 364. ·

presented was determined, the remedy invoked and granted in this case served its purpose, but it is necessary that the cause be sent back to the trial court for a final disposition in that court.

Our attention has been called to the case of *Norton* v. *Shelby County* (1885), 118 U. S. 425, 6 Sup. Ct. 1121, 30 L. Ed. 178, as authority for the proposition that there cannot "be a *de facto* office, under a constitutional government." In our view of the instant case, the question suggested is unimportant in the decision of this case, and we therefore express no opinion on it. However, in the case of *State* v. *Pooler* (1909), 105 Me. 224, 74 Atl. 119, 24 L. R. A. (N. S.) 408, 134 Am. St. 543, the question of whether or not there may be a *de facto* officer without a *de jure* office is thoroughly considered, as also the case of *State* v. *Carroll* (1871), 38 Conn. 449, 9 Am. Rep. 409, and the Norton case, the two leading cases often referred to in the books as sustaining the doctrine appellants would have this court announce. Each of these cases is analyzed, and the conclusion is reached that there can be no reasonable doubt that there may exist a *de facto* office as well as a *de facto* officer. See, also, *Lang* v. *Bayonne* (1906), 74 N. J. Law 455, 68 Atl. 90, 122 Am. St. 391, 12 Ann. Cas. 961, and note to same case, 15 L. R. A. (N. S.) 93; *State, ex rel.* v. *Bailey* (1908), 106 Minn. 138, 118 N. W. 676, 19 L. R. A. (N. S.) 775, 130 Am. St. 592, 16 Ann. Cas. 338. Judgment affirmed.

Lairy, C. J., and Townsend, J., dissent.

NOTE.—Reported in 123 N. E. 794. Officers: public, election or appointment under unconstitutional statute, as *de facto* officer, Ann. Cas. 1915C 498; who are *de facto* officers, 19 Am. Dec. 63, 29 Cyc 1391. See under (1) 29 Cyc 1418; (6) 29 Cyc 1416.