235 Ind. 353 (1956)
133 N.E.2d 848
STATE OF INDIANA EX REL. PENNSYLVANIA RAILROAD COMPANY ET AL.
v.
IROQUOIS CONSERVANCY DISTRICT COURT, ET AL.
No. 29,299.
Supreme Court of Indiana.
Filed April 20, 1956.
*355 Russell Harker, Harker & Irwin, of Frankfort, Cope J. Hanley, of Rensselaer, Crumpacker & Schroer, of Hammond, and Robert H. Bierma, Albert S. Long, Jr. and Marvin A. Jersild (of counsel), all of Chicago, Illinois, for relators.
Ralph Bower, of Kentland, and Thomas B. Dumas, of Rensselaer, for respondents.
Edwin K. Steers, Attorney General, Addison M. Dowling, and Judson L. Stark, Deputy Attorneys General, Amicus Curiae.
Robert D. McCord, Harry T. Ice, David N. Brewer, Robert D. Risch and Ross, McCord, Ice & Miller (of counsel), of Indianapolis, Amicus Curiae.
BOBBITT, C.J.
On May 26, 1955, relators filed with the clerk of this court their petition for a writ of prohibition wherein they sought to prohibit respondents from proceeding further with the establishment of a Conservancy District as provided by Acts 1947, ch. 239, *356 p. 902, being § 27-1201, and subsequent sections, Burns' 1948 Replacement.
The petition alleged that respondents were without jurisdiction in said proceedings because the Conservancy Act is unconstitutional. We issued a temporary writ.[1]
We are aware of the well established rules (1) that the constitutionality of a statute will not be determined if there is any other logical basis on which the appeal can be decided; (2) that the constitutionality of a statute will be upheld if it is reasonably possible to do so; and (3) that if a statute is of doubtful construction, all doubt will be resolved in favor of its validity.
However, since the litigation here involved cannot be terminated upon any other basis, we will consider the constitutional questions presented.

First: Relators advance several grounds of unconstitutionality. However, we deem it necessary to consider only one, viz., that the Conservancy Act violates Art. 4, Section 19 of the Constitution of Indiana, which provides, in part, as follows:
"Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title."
Several pages of relators' brief are devoted to pointing out and discussing numerous provisions of the Act which they assert are not properly embraced in the title thereof.
*357 We shall, however, first consider the contention that the Conservancy Court, which is created by the provisions of § 6 of the Act, is not embraced in the title.
Section 6 provides as follows:
"Upon the determination of the judge of the court in which any such petition shall have been filed that the petition is sufficient, he shall cause notice thereof to be given to the judge of the circuit court, serving each county included in whole or in part within the proposed conservancy district. Thereafter the judges of each such circuit court shall sit together as a trial court to determine whether or not the conservancy district prayed for in such petition shall be established. In case of the inability to serve of the judge of any circuit, the chief justice of the supreme court, upon application of any interested person and proper showing of need, shall assign a judge of any superior court from a county located within such circuit. However, if there is no such superior court, the judge or judges hearing the petition shall represent such circuit.
"The court thus established shall have power and authority to establish conservancy districts when the conditions stated in section 4 of this act are found to exist. Except as otherwise hereinafter provided, such court shall have for all purposes of this act, original and exclusive jurisdiction co-extensive with the boundaries and limits of the district or proposed district and of the lands and other property included in, or proposed to be included in, such district or affected by such district, without regard to the usual limits of its jurisdiction, and the issues involved in such petition shall be tried and the decision of the court thereon shall be subject to appeal as in other civil causes. Each judge when sitting as a member of the court shall receive his usual salary and eight cents per mile for travel from his own court to the place of trial, but no per diem. The mileage shall be taxed as cost in the cause being tried.
"The court shall adopt rules of practice and procedure not inconsistent with the provisions of this *358 act and the general laws of the state. In case the court consists of more than three judges, it may designate three of its members from three different circuits to preside over the court, hear matters coming before the court, and make determinations and decisions or findings and recommendations, as the rules of the court provide, with respect to any matters authorized by such rules, the disposition of which is vested in the court, except the making of final decisions and orders as to: (1) the establishment, dissolution or merger of the district or of subdistricts thereof; (2) the adoption, rejection or amendment of the official plan; (3) the appointment and removal of directors and appraisers; (4) the confirmation of the appraisers' report of benefits, damages, and appraisals of property; (5) the authorization of maintenance assessments in excess of one per cent of benefits; (6) the authorization of a readjustment of the appraisal of benefits in accordance with section 55 of this act; (7) the approval of the method of financing improvements and activities under section 28; (8) the determination of rates of compensation for water under section 27 and section 61; and (9) the examination of the annual report of the board of directors as provided under section 64. The concurrence of two of the three judges so designated shall be necessary for any action or determination thereby and it shall have, if so provided by the rules of the court, the same force and effect as though taken or made by the full court. All actions and determinations by the full court shall require the affirmative vote of a majority of the judges constituting the court. In all cases in which the judges are evenly divided that side with which the presiding judge votes shall prevail, except that in the event the court consists of two judges and they find themselves unable to agree on any question left to their decision, a judge of the circuit or superior court of some other county shall be designated by the chief justice of the supreme court of the state to sit and vote as a third member of the court until such question is decided."
*359 The title of the act is as follows:
"AN ACT to prevent floods, to protect cities, towns, farms and highways from inundation, to conserve water for beneficial uses, and to authorize the organization of drainage and conservancy districts, and declaring an emergency."
In considering the application of that part of Section 19, Art. 4 of the Indiana Constitution, which provides that the subject shall be expressed in the title, we recognize that it is designed only for titles narrower than the enactment. Ule v. State (1935), 208 Ind. 255, 266, 194 N.E. 140, 101 A.L.R. 903; Moore-Mansfield, etc. Co. v. Indianapolis, etc. R. Co. (1913), 179 Ind. 356, 358, 101 N.E. 296, 44 L.R.A. (N.S.) 816; In re Talbot (1915), 58 Ind. App. 426, 431, 108 N.E. 240.
We are also mindful of the well established rule that if a title expresses the general purpose of the Act, everything contained in the Act which is germane to the purpose or properly conected therewith as a means of making the Act effective is covered by the title. It is not necessary that the title should contain a complete abstract of the contents of the Act or enumerate all its provisions in detail. Sarlls, City Clerk v. State, ex rel. (1929), 201 Ind. 88, 102, 166 N.E. 270, 67 A.L.R. 718.
This rule, however, has application only when the title is broader than the enactment,[2] and for reasons which hereafter appear, does not apply to the title here under consideration.
*360 Respondents rely upon State ex rel. Taylor v. Greene Circuit Court (1945), 223 Ind. 562, 63 N.E.2d 287, and Ule v. State, supra (1935), 208 Ind. 255, 194 N.E. 140, as authority for their contention that the title of the Conservancy Act is sufficiently broad to include the establishment of a new court.
The title of the Act involved in State ex rel. Taylor v. Greene Circuit Court, supra, was "`An Act concerning children born out of wedlock.'" This is a broad general title in contrast to the one here in question.
In State ex rel. Taylor v. Greene Circuit Court, supra, at p. 568 of 223 Ind., this court said:
"Legislation that the General Assembly believes necessary to accomplish the purposes that may be logically inferred from the title may be contained in the act without violating the constitutional provision of Art. 4, § 19, of the Constitution of Indiana."
Here, again, the court was speaking of a broad general title and not one that was narrower than the enactment.
Ule v. State, supra, (1935), 208 Ind. 255, 194 N.E. 140, also relied upon by respondents, involved the question of whether or not the title there in question[3] embraced more than one subject. At page 266 of 208 Ind., this court said:
"The subject expressed in an act should be reasonably specific so as to indicate some particular branch of legislation as a head under which the particular provisions of the act might reasonably be looked for, and the generality of a title is not objectionable if it is not made to cover legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or *361 proper connection. Sarlls v. State ex rel. (1929), 201 Ind. 88, 166 N.E. 270. The provision of the Constitution here in question aims only at titles narrower than the enactment. The unnecessary breadth is ordinarily no objection to it. Volderauer v. State (1924), 195 Ind. 415, 143 N.E. 674."
The Attorney General, in his brief amicus curiae, calls our attention to language of this court in Albert v. Milk Control Board of Indiana (1936), 210 Ind. 283, 288, 200 N.E. 688, as follows:
"Moreover, `it is not necessary that the title of an act furnish a complete index to its contents. It will be sufficient to meet constitutional requirements when, upon liberal construction, it is sufficient to apprise the legislators and the public in general of the subject-matter of the legislation. Or, in other words, if it be so framed as to reasonably lead to an inquiry into the body of the bill, it is sufficient.' Gmeiner v. State (1925), 197 Ind. 43, 149 N.E. 728; State v. Arnold (1895), 140 Ind. 628, 38 N.E. 820."
We recognize these rules, but in our opinion they are not applicable to the question with which we are here concerned. Neither do they gather, under the cloak of legality, subject-matter that is not reasonably referable to one general subject which is expressed in the title.
The statement appearing in the above quotation from Albert v. Milk Control Board of Indiana, supra, and found in other opinions of this court,[4] that if a title to an Act "`be so framed as to reasonably lead to an inquiry into the body of the bill, it is sufficient'" does not supersede the constitutional provision[5] that an Act shall embrace but one subject and matters properly related thereto. It can have no application where matters *362 which have no proper connection with the subject expressed in the title are included in the enactment.
The case of Brandon v. State (1861), 16 Ind. 197, is also urged as persuasive in the case at bar. There a title, "An act to authorize the formation of new counties, and to change county boundaries," was held to include the organization of a Circuit Court. This case is clearly distinguishable from the one at bar. A Circuit Court is not only related to the subject of the organization of a county, but is properly connected therewith. One reading the title of such an Act in this state would naturally expect to find provisions for the organization of a Circuit Court since it is a customary and essential part of the county unit of government in Indiana. The same cannot be said about the provision for a new court in an Act concerning drainage.
Other cases cited by respondents and the Attorney General, amicus curiae, are concerned with titles that were broader than the enactment and are neither applicable nor helpful in the case at bar.
We do not consider the title of the Conservancy Act as being of broad general character, but rather one which specifies four particular branches of the general subject of drainage, viz., (1) prevention of floods; (2) protection from inundation; (3) conservation of water; and (4) the organization of drainage and conservancy districts.
This court, in Albert v. Milk Control Board of Indiana, supra (1936), 210 Ind. 283, 288, 200 N.E. 688, stated the purpose of Art. 4, Section 19, supra, as follows:
"The above section has been thoroughly discussed and passed upon by this court and, as said in many cases, the purpose of the section is to prevent surprise or fraud in the legislature by means of a provision or provisions in a bill of which the title gave *363 no information and to apprise the people of the subject of legislation under consideration. Crabbs v. State (1923), 193 Ind. 248, 139 N.E. 180. And it is also intended to prevent a combination of non-related subjects in the same act. Sarlls v. State ex rel. Trimble (1929), 201 Ind. 88, 166 N.E. 270."
This language is clearly applicable to the provisions of Section 6 of the Act. It is obvious that one reading the statute would surely be surprised at finding an entirely new and novel court created to administer the Act. It cannot be denied that the title gives no information regarding the creation of a new court.
The rule applicable to the situation here presented is ably stated in Hobbs v. Gibson School Tp. (1924), 195 Ind. 1, 5, 144 N.E. 526, as follows:
"If the title of an act is drawn so that it embraces only one particular branch of a general subject, the body of the act must be confined to the particular subject expressed in the title, and to matters properly connected therewith. Other matters within a general subject which also might have been embraced by a title of general import, but which are not within the restricted title adopted cannot be enacted with effect, whatever the body of the act may say as to such matters. State ex rel. v. Commercial Ins. Co. (1902), 158 Ind. 680, 684, 64 N.E. 466; State ex rel. v. Board (1906), 166 Ind. 162, 197, 76 N.E. 986."
In Crabbs v. State (1923), 193 Ind. 248, 253, 254, 139 N.E. 180, the court quotes from an eminent authority rules that may well be used as a measuring stick by which the sufficiency of the title to any Act may be determined, and we adopt them as our guide here. They are as follows:
"Under this clause of the constitution the title becomes an indispensable part of every act. Sutherland, *364 Statutory Construction p. 94, § 87, says: `It is required not only that an act shall contain but one subject, but that that subject be expressed in the title. The title, thus made a part of each act, must agree with it by expressing its subject; the title will fix bounds to the purview, for it cannot exceed the title-subject, nor be contrary to it. An act will not be so construed as to extend its operations beyond the purpose expressed in the title. It is not enough that the act embraces but a single subject or object, and that all its parts are germane; the title must express that subject and comprehensively enough to include all the provisions in the body of the act. The unity and compass of the subject must therefore, always be considered with reference to both title and purview ... The title cannot be enlarged by construction when too narrow to cover all the provisions in the enacting part, nor can the purview be contracted by construction to fit the title; but the title, if not delusively general, may be sufficient though more extensive than the purview.'"
That a new court is created by Section 6 of the Conservancy Act has already been established. State ex rel. N.Y.C. Ry. v. Starke Cir. Ct. (1952), 231 Ind. 360, 365, 108 N.E.2d 708.
This brings us then to the question  Is the title of Chapter 239 of the Acts of 1947 sufficiently broad to include the creation of a new court?
The Supreme Court of Tennessee had before it the identical question in Mengel Box Co. v. Fowlkes (1916), 135 Tenn. 202, 186 S.W. 91. The title of the Act there in question was:
"An act to establish a levee and drainage district to be known as the Dyer levee and drainage district, within the following boundaries, to wit: [Here reciting them]  for the purpose of erecting a levee from the high ground south of Tiptonville, Tennesee, to the mouth of the Obion river, and for the purpose of draining and the reclamation of the wet *365 and swamp lands within such boundaries, and prescribe the method of doing so, and providing for the assessment and collection of the cost and expense of such improvement, and the manner of obtaining the means and funds therefor."
Section 4 of the Tennessee Act provided for a court "composed of the chairman or judges of the county courts of the counties of Dyer, Lake and Obion." Duties imposed upon this court were similar to those imposed by Section 6 of the Indiana Conservancy Act.
It was there asserted, as in the case at bar, that the Act embraced more than one subject, and that the creation of a new court was not set out in the title, hence, it violated Art. 2 of § 17 of the Tennessee Constitution, which provides that, "no bill shall become a law which embraces more than one subject, that subject to be expressed in the title."
The Tennessee court held that a new court was created by the Act and sustained the judgment of the Chancery Court holding the Act was not constitutionally passed because it violated Art. 2, § 17 of the Tennessee Constitution in that it embraced more than one subject and the creation of a new court was not set out in the title. Because of the identical questions involved and the similarity of our constitutional provisions with that of the State of Tennessee, the sound reasoning of the Tennessee Supreme Court in the Mengel case is irresistibly persuasive in our consideration of the question here presented.
The Act here in question, as did the Tennessee Act, instead of utilizing an existing court, which the legislature has done in all other drainage acts throughout the history of the state, creates a new and independent court composed of the circuit judges in the counties affected by the proceedings. No such *366 court is mentioned in the title, nor is there anything to be found in the title from which it might be logically inferred that a new court was created by the enactment.[6] Extending the most liberal interpretation of the language used in the title and employing the largest scope that reason will permit, we fail to find anything in the title which would apprise anyone of the provision of the Act creating a new court.[7] The creation of a new court has no necessary or proper connection with, or relation to, the prevention of floods, protection from inundation, conservation of water or the organization of drainage and conservancy districts.[8] A new court is not necessary to provide for the complete enforcement of the Act.[9]
For the reasons above stated the title to ch. 239 of the Acts of 1947 does not embrace the subject of the creation of a new court, and Section 6 of said Act and any other part thereof which might be construed to create a new court is in conflict with Art. 4, Section 19 of the Constitution of Indiana and is, therefore, void.
Second: Section 82 of the Act of 1947, ch. 239, provides:
"SEC. 82. In case any section or sections or part of any section of this act shall be found to be unconstitutional, the remainder of the act shall not thereby be invalidated, but shall remain in full force and effect."
Section 6 is invalid in all its application to the entire Act. The valid portions of the Act do not form a complete *367 enforceable Act within themselves, separate from the invalid parts. Their provisions have no means of enforcement without the court provided in Section 6 of the Act, hence they are of no force and effect and the Act as a whole must fail.
Third: Relators point out and discuss numerous other subjects in the enactment which they contend are not embraced in the title, among which are: the establishment of irrigation projects and levying of irrigation assessments; provisions for collection and disposal of sewage; a provision for the establishment of forest wild life areas, parks and recreation facilities; and making certain violations of the Act misdemeanors or felonies and providing penalties therefor.
However, because of the result which we have reached on the question of the creation of a new court, it is not necessary that we decide the other questions presented on the sufficiency of the title. Neither do we deem it necessary to decide other questions raised and ably briefed by relators, as no doubt this litigation will call to the attention of those interested the many alleged defects in the Conservancy Act[10] in the form in which it was enacted.
*368 The temporary writ heretofore issued is hereby made permanent.
Arterburn and Achor, JJ., concur.
Landis, J., concurs in the result that the Act is unconstitutional, and concurs with the law stated by Chief Justice Bobbitt in footnote 10 of his opinion on the protection *369 afforded the acts of a de facto officer before his office is declared unconstitutional.
Emmert, J., concurs with opinion.

CONCURRING OPINION
EMMERT, J.
(Concurring Opinion)
The title of the act under attack is "AN ACT to prevent floods, to protect cities, towns, farms and highways from inundation, to conserve water for beneficial uses, and to authorize the organization of drainage and conservancy districts, and declaring an emergency." Chapter 239, Acts 1947. It is not contended that the title contains two subjects, but only that the Conservancy District Court is without the title.
"Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title." Section 19 of Article 4, Constitution of Indiana. Thus, the major premise for solving the constitutional problem here presented becomes, the title must state but one subject, but the body of the act may contain any matter properly connected with the subject.
The cases do not hold that a short general title offends § 19 of Article 4 of the Constitution. "Titles expressed in general language not only give more adequate warning concerning subject matter, but likewise reflect more satisfactorily the policy involved in the statute." 2 Sutherland, Statutory Construction (Horack's 3rd Ed.) § 4803, p. 345. If we are to hold the general title of the Conservancy Act of Indiana invalid, by implication we overrule a number of well decided cases holding other *370 general titles constitutional, and cast a cloud of constitutional doubts over many acts with general titles whose constitutionality has always been assumed since the early cases of this court.
It is well settled that whenever the constitutionality of the title of an act is put in issue, this court will adopt a very liberal construction in order to hold the title constitutional. Ennis v. State Highway Comm. of Indiana (1952), 231 Ind. 311, 317, 108 N.E.2d 687; State ex rel. Taylor v. Greene Circuit Court (1945), 223 Ind. 562, 567, 568, 63 N.E.2d 287; State ex rel. Devening v. Bartholomew (1911), 176 Ind. 182, 188, 95 N.E. 417; Ule v. State (1935), 208 Ind. 255, 194 N.E. 140, 101 A.L.R. 903.
The Constitution never intended the title should be an index or an abstract of the act. State v. Coleman (1949), 227 Ind. 161, 84 N.E.2d 709. As is well stated by this court in the leading case of Albert v. Milk Control Board of Indiana (1936), 210 Ind. 283, 288, 200 N.E. 688, "the purpose of the section is to prevent surprise or fraud in the legislature by means of a provision or provisions in a bill of which the title gave no information and to apprise the people of the subject of legislation under consideration. Crabbs v. State (1923), 193 Ind. 248, 139 N.E. 180.... It has also been held by this court that where the title relates to a subject which is broad enough to make it possible to comprehend different matters, which might or might not be included in the subject as means to a given end, courts will solve doubtful questions as to the relation of a particular matter to the subject in favor of the legislation. State ex rel. v. Board (1906), 166 Ind. 162, 76 N.E. 986."
Nor can any valid constitutional objection be raised because the title does not index the means or instrumentalities or machinery by which the general objects *371 and purposes already expressed are to be accomplished. "The means or instrumentalities through which the object of a statute is to be effected are necessary incidents, and need not be specifically set out in the title. It is difficult to see how anything could be more germane to a legislative purpose than the methods adopted to carry out the purpose. Certainly it could not be required that every means appropriate to the accomplishment of the object of one statute should be made the separate subject of another act." 1 Sutherland, Statutory Construction (Horack's 3rd Ed.) § 1718, pp. 310, 311. (Italics added.) This rule was also noted in Albert v. Milk Control Board of Indiana (1936), 210 Ind. 283, 289, 200 N.E. 688, supra, by the following reasoning: "It has been said that the word `subject' in said section indicates the thing about which the legislation is had, and the word `matters' the incident or secondary things necessary to provide for its complete enforcement. Board v. Scanlan (1912), 178 Ind. 142, 98 N.E. 801. The legislature of 1911 passed an act entitled, `An act concerning intoxicating liquors.' It was held in the foregoing case that this title was sufficient to embrace all other matters for the enforcement of the act. Other illustrations are: `An act concerning highways,' Smith v. Board (1910), 173 Ind. 364, 90 N.E. 881; `An act concerning drainage,' Thorn v. Silver (1910), 174 Ind. 504, 89 N.E. 943, 92 N.E. 161, 94 N.E. 753; `An act regulating descents and the apportionment of estates,' Stiers v. Mundy (1910), 174 Ind. 651, 92 N.E. 374."
In Ross v. Davis (1884), 97 Ind. 79, 85, this court held the drainage act entitled "An act concerning drainage," was broad enough to embrace provisions for the appointment of a board of drainage commissioners.
In State v. Gerhardt (1896), 145 Ind. 439, 459, 44 N.E. 469, 33 L.R.A. 313, this court held the act entitled *372 "The better regulation and restriction of the sale of intoxicating liquors," properly embraced (1) penalties for its violation, (2) provisions for its enforcement, (3) provision for remonstrances against licenses, and (4) conferred jurisdiction upon certain courts for the violation of this and other acts upon the subject of selling intoxicating liquors. See also Hingle v. State (1865), 24 Ind. 28.
More recently in Carey v. State ex rel. Dept. of Fin. Inst. (1938), 213 Ind. 181, 185, 12 N.E.2d 131, it was objected that the title to our Financial Institutions Act, to-wit: "An Act concerning financial institutions," was too limited to embrace the creation of the Department of Financial Institutions. The court there said, "There is no merit in this contention. The title is broad enough to cover all matters connected with financial institutions and their regulation and control. Board of Com'rs, etc. v. Scanlan (1912), 178 Ind. 142, 98 N.E. 801; State ex rel. Test v. Steinwedel et al. (1932), 203 Ind. 457, 180 N.E. 865." There is no logical difference as far as titles are concerned between the creation of a new commission and a new court of limited jurisdiction to enforce an act. Both are instrumentalities for the accomplishment of the general subject of the act.[1]
*373 A decision most persuasive on the issue presented in this original action is Brandon v. State (1861), 16 Ind. 197, where the title of Chapter 22 of the 1859 Acts (page 60) was "AN ACT to amend the first section of An Act entitled `An Act to authorize the formation of new counties, and to change county boundaries,' approved March 7, 1857, so as to allow new counties to be formed out of territories of less than four hundred square miles, and prescribing how the number of qualified voters shall be ascertained." This court said "that a provision for the organization and sitting of Courts in new counties, is properly and intimately connected with the subject of the formation of such counties." (Page 198.) Section 10 of the act could change the area of the judicial circuit, and we take judicial notice of the fact that judicial circuits often embraced several counties. Under the act the area of a judicial circuit could be either diminished or increased. The title of the act said nothing about courts or judicial circuits, yet it was properly held these were matters properly connected with the subject of the act.
Admittedly, there are many statements in the various cases of this court which are broad enough to require every title to contain an abstract of everything in the body of the act, as well as dicta in certain cases which contradict the reasoning and result of the particular decision under consideration, but the decisions themselves, with rare exceptions, whether they say so or not, apply the test of germaneness to the subject of the title.
"It has been repeatedly held by this court that this section aims only at titles narrower than the enactment. The unnecessary breadth of the title ordinarily is no *374 objection to it. `The generality of a title is no objection to it so long at it is not made to cover legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection.' If the title covers a general subject it need not go further and mention all matters that are germane to the subject nor mention details. Crabbs v. State (1923), 193 Ind. 248, 254, 255, 139 N.E. 180." State v. Griffin (1948), 226 Ind. 279, 284, 285, 79 N.E.2d 537.
This court has no business in attempting to read the minds of the legislators or the public, and for us to say what they would reasonably expect to find in an act would require the title to be an index. A general subject matter in a title puts the legislators and public on notice that details germane to that subject matter may be in the body of the act, although not expressed in the title, and this is all the notice the Constitution requires. Section 19 of Article 4 only requires the subject to be expressed in the title, and "matters properly connected therewith" only limit what may be in the body of the act. The cases are too numerous to cite on this proposition, but they are to be found in the Indiana digests.
The prevention of floods can be assisted or accomplished by the conservation of water for beneficial uses, and since the provisions of the act could not execute themselves, some authority must be constituted to execute the objects and provisions of the act. The establishment of a conservancy court for the district is a convenient method of accomplishing the general expressed subject of the act.[2]
*375 The constitutional prohibition against two subjects in the title of an act was designed to prevent legislative logrolling. When two clauses of a title are under attack for containing more than one subject, this court in solving the problem determines whether they are germane to each other, and if they are not, then the act is unconstitutional. Jackson, Secy. v. State ex rel. South Bend Motor Bus Co. (1924), 194 Ind. 248, 254, 142 N.E. 423. But if there is a general clause in the title which fully states a general subject, which is then followed by other clauses in the title reciting particulars or details within the general subject and germane to it, the latter may be disregarded as surplusage which could well have been omitted. Western Union Telegraph Co. v. Braxtan (1905), 165 Ind. 165, 168, 74 N.E. 985; Kelley v. Finney (1935), 207 Ind. 557, 581, 194 N.E. 157.[3]
The majority opinion holds that the establishment of a Conservancy District Court is not germane to the first clause of the title, being "An Act to prevent floods..." Therefore, under this holding the title could not have contained a clause establishing the court, or even a commission with drainage powers analogous to a board of *376 county commissioners, for then it would have contained two subjects. If the majority opinion is good law, then the means, instrumentality, or legal machinery established to effectuate the general subject of an act will have to be provided by a separate act. "The constitutional requirement is that the subject or object of an act be single, and that it be expressed in the title. It does not require that the various means adopted to facilitate the legislative intent be articulated in the caption, or that each means be made the subject of a separate act. Indeed, to require this, would make legislation impossible." 1 Sutherland, Statutory Construction (Horack's 3rd Ed.) § 1712, p. 306. Moreover, if the rule decided by the majority opinion is to be the law on titles to acts, there are a great number of important laws on the books which are unconstitutional because the means, agency, methods, instrumentalities or machinery is not stated in the title, nor could they be under the holding that they would not be germane to the general subject of the title.
Chapter 253 of the 1955 Acts, § 3-2201, Burns' 1946 Replacement (Supp.), now authorizes this court to issue writs of mandate and prohibition to "Conservancy District Courts," but our decision in State ex rel. N.Y.C.R.R. v. Starke Cir. Ct. et al. (1952), 231 Ind. 360, 108 N.E.2d 708, holding that a new court was created, is still the law of this jurisdiction. Under the decisions above discussed the statutory provisions concerning this Conservancy District Court are germane to the subject expressed in the title, and therefore, the act is not unconstitutional for being in violation of § 19 of Article 4 of the Constitution.
The relators further contend that the creation of the Conservancy District Court under § 27-1206, Burns' 1948 Replacement [Acts 1947, ch. 239, § 6, p. 902] et seq., *377 is unconstitutional in that it provides for judges of circuit courts at the same time being judges of another court. The applicable sections of Article 7 of the Constitution provide as follows:
"The Circuit Courts shall each consist of one judge, and shall have such civil and criminal jurisdiction as may be prescribed by law." Section 8.
"The State shall, from time to time, be divided into judicial Circuits; and a Judge for each Circuit shall be elected by the voters thereof. He shall reside within the circuit, and shall hold his office for the term of six years, if he so long behave well." Section 9.
"The General Assembly may provide, by law, that the Judge of one Circuit may hold the Courts of another Circuit, in cases of necessity or convenience; and in case of temporary inability of any Judge, from sickness or other cause, to hold the Courts in his Circuit, provision may be made, by law, for holding such courts." Section 10.
It requires no more than a casual examination of these sections to determine that there shall be but one judge of a circuit court who shall be elected by the voters of the circuit. By law the General Assembly can provide that the judge of one circuit may hold the courts of another circuit in cases of necessity or convenience. No provision is made for the judge of a circuit court holding the court or courts of a statutory judicial district, or any other kind of a statutory court. Section 10 provides for a case where the judge of one circuit would exercise all the jurisdiction of the judge of another circuit, such as would be exercised by a judge pro tempore, and it clearly has no application where a judge of a circuit court might be appointed a special judge in a particular matter in a statutory court.
The general rule is that a public officer takes his office cum onere and subject to having additional rights, *378 powers and duties cast upon the office. However, when the Constitution specifically prescribes the courts over which a judge of a circuit court may exercise the jurisdiction of another court, by implication it excludes the imposition of the entire jurisdicton of another court.
"In construing constitutional provisions, a rule of general acceptance is `that which is expressed makes that which is silent to cease'. Gougar v. Timberlake (1897), 148 Ind. 38, 48, 46 N.E. 339, 37 L.R.A. 644, 62 Am. St. 487. When the constitution declares how a right may be exercised, it impliedly prohibits its exercise in some other way. Morris v. Powell (1890), 125 Ind. 281, 25 N.E. 221, 9 L.R.A. 326; Denny v. State, ex rel., supra. The rule is expressed by Cooley as follows: `When the constitution defines the circumstances under which a right may be exercised or a penalty imposed, the specification is an implied prohibition against legislative interference to add to the condition, or to extend the penalty to other cases.' Cooley, Const. Lim. (7th ed.) 64." State v. Patterson (1914), 181 Ind. 660, 664, 665, 105 N.E. 228. This rule of construction was followed in Morris v. Powell (1890), 125 Ind. 281, 292, 25 N.E. 221; Denney, Clerk v. State ex rel. Basler (1896), 144 Ind. 503, 512, 42 N.E. 929; Gougar v. Timberlake (1897), 148 Ind. 38, 48, 46 N.E. 339, 37 L.R.A. 644; Ellingham v. Dye (1912), 178 Ind. 336, 374, 99 N.E. 1, 99 N.E. 29; Bd. of Election Commissioners v. Knight (1917), 187 Ind. 108, 114, 115, 117 N.E. 565, 567; Robinson v. Moser (1931), 203 Ind. 66, 179 N.E. 270; State v. Dearth (1929), 201 Ind. 1, 12, 164 N.E. 489.
If we are to hold the General Assembly could create a Conservancy District Court consisting of all the circuit court judges of the circuits of the conservancy district, it would logically follow that the General Assembly *379 could create a highway district court, a sewage disposal district court, a hospital district court, a civil disaster district court, an oil and gas district court, a toll road district court, an aviation district court, a park district court, and just about any other kind of a district court for any exercise of the police power of the state, and make the judges of the circuit courts ex officio judges of such courts. This is not a case where there is a possibility of abuse of a constitutional power, but it is an example of a legislative attempt to create a court consisting of judges prohibited by the Constitution. It is not necessary to decide at this time whether such a statutory court could be created if the judges were appointed or selected in a different manner. Nor is it necessary to decide other contentions by the petitioners that the act is unconstitutional. Therefore, I concur in the result of the majority opinion.
NOTE.  Reported in 133 N.E.2d 848.
NOTES
[1] See Act 1955, ch. 253, p. 647, for amendatory act giving this court jurisdiction. This Act supersedes State ex rel. N.Y.C. Ry. v. Starke Cir. Ct. et al. (1952), 231 Ind. 360, 108 N.E.2d 708, which held that this court was without jurisdiction to prohibit a conservancy court.
[2] Crabbs v. State (1923), 193 Ind. 248, 254, 139 N.E. 180; Sarlls, City Clerk v. State ex rel. (1929), 201 Ind. 88, 102, 166 N.E. 270, 67 A.L.R. 718; Board v. Scanlon (1912), 178 Ind. 142, 98 N.E. 801; Smith v. Board (1910), 173 Ind. 364, 90 N.E. 881; Ross v. Davis (1884), 97 Ind. 79; Carey v. State ex rel. Dept. Fin. Inst. (1938), 213 Ind. 181, 12 N.E.2d 131.
[3] Chapter 213, Acts 1925.
[4] Gmeiner v. State (1925), 197 Ind. 43, 47, 149 N.E. 728.
[5] Art. 4, Section 19 of the Constitution of Indiana.
[6] See: State ex rel. Taylor v. Greene Circuit Court (1945), 223 Ind. 562, 63 N.E.2d 287.
[7] State v. Closser (1913), 179 Ind. 230, 99 N.E. 1057; Albert v. Milk Control Board of Indiana (1936), 210 Ind. 283, 288, 200 N.E. 688.
[8] Crabbs v. State (1923), 193 Ind. 248, 255 139 N.E. 180.
[9] Board v. Scanlan (1912), 178 Ind. 142, 147, 98 N.E. 801.
[10] In a brief filed by Ross, McCord, Ice & Miller of Indianapolis, Indiana, amicus curiae, it has been called to the attention of the court that two issues of bonds to pay the cost of constructing storm and sanitary sewers, each within a single county, have been sold to the public under the provisions of the Conservancy Act; and that there are now outstanding and in the hands of the general public $261,000 principal amount of one issue and $247,000 of the other.

The question of the validity of these bonds is not an issue in this case, nor do we attempt to incorporate it into those here presented. However, because the acts of the directors appointed in each of these proceedings, involve the interests of the public and of the holders of the bonds still outstanding we feel impelled to call attention to a rule of law as announced by the courts of appeal in this state, which we believe controlling as to the validity of such bonds as were issued prior to the decision of this court herein.
The law seems to be well settled in Indiana that one who is elected or appointed to an office under an unconstitutional statute, before it is adjudged to be so, is an officer de facto, and his acts will be held valid in respect to the public, whom he represents, and to third persons with whom he deals officially. Parker et al. v. The State ex rel. Powell (1892), 133 Ind. 178, 200, 32 N.E. 836, 18 L.R.A. 567; Felker v. Caldwell (1919), 188 Ind. 364, 371, 123 N.E. 794; City of Michigan City v. Brossman (1938), 105 Ind. App. 259, 11 N.E.2d 538.
The rule is ably stated in Felker v. Caldwell, supra, as follows:
"`All that is required when there is an office, to make an officer de facto, is, that the indivdual claiming the office is in possession of it, performing its duties, and claiming to be such officer under color of an election or appointment, as the case may be. It is not necessary his election or appointment should be valid, for that would make him an officer de jure.' In the case of Erwin v. Jersey City (1897), 6 N.J. Law 141, 144, 37 Atl. 732, 733, 64 Am. St. 584, it is said: `When an official person or body has apparent authority to appoint to public office, and apparently exercises such authority, and the person so appointed enters upon and performs the duties of such office, his acts will be held valid in respect to the public, whom he represents, and to third persons, with whom he deals officially, notwithstanding there was a want of power to appoint him in the person or body which professed to do so.'"
Carleton v. People (1862), 10 Mich. 250.
See also:
Buck v. Hawley & Hoops (1906), 129 Iowa 406, 408, 105 N.W. 688; Chicot Co. Drainage Dist. v. Baxter State Bank (1940), 308 U.S. 371, 84 L.Ed. 329, 60 S.Ct. 317; City of Albuquerque v. Water Supply Co. (1918), 24 N.M. 368, 174 Pac. 217, 5 A.L.R. 519.
[1] In Marion, Bluffton and Eastern Traction Company v. Simmons (1913), 180 Ind. 289, 290, 291, the court held "An Act concerning municipal corporations" authorized as germane to the subject matter provisions to be made by the board of public works "for the construction or change of levees, watercourses, drains and sewers."

"To say that a matter may not constitutionally find a place in an act, because it more logically belongs to a subject which is different from that which constitutes the principal burden of the act, or that it might itself properly constitute the subject of a separate act, is but to insist that but one subject, or matter, may be embodied in a single act. But the constitution does not so require. It authorizes one subject, and any number of matters, provided they have any natural or logical connection with each other in legislation." Hingle v. State (1865), 24 Ind. 28, 31.
[2] "The general purpose of these provisions is accomplished when a law has but one general object, which is fairly indicated by its title. To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate act relating to that alone, would not only be unreasonable, but would actually render legislation impossible." 1 Cooley, Constitutional Limitations (8th Ed.) pp. 296, 297.
[3] "We realize that it is quite common with legislators in the framing of titles to bills, under promptings of extreme caution, to follow the general subject by a statement of particulars, or details  sometimes all, sometimes only in part. In such cases, if the subject is well stated, the specifications and details become surplusage, and of little consequences, for they neither invalidate the act, nor limit its application to any provision that is germane to the general subject expressed in the title, unless the language employed in the title clearly shows that it was the legislative intent to confine the act to the particulars specified. (Citing cases.)" Western Union Telegraph Co. v. Braxtan (1905), 165 Ind. 165, 168, 74 N.E. 985. Approved in Kelley v. Finney (1935), 207 Ind. 557, 581, 194 N.E. 157.