GOOD ET AL. *v.* WESTERN PULASKI COUNTY
SCHOOL CORPORATION ET AL.

[No. 19,989. Filed September 16, 1965. Rehearing denied October 26, 1965. Transfer denied October 4, 1966. Rehearing on denial of Transfer November 22, 1966.]

*Stevens & Wampler*, of Plymouth; *Horner, McDowell & Gast*, of Winamac, *Bowen, Myers, Northam & Givan*, of Indianapolis, for appellants.

*Lester L. Wilson,* of Winamac, and *Arch N. Bobbitt, William D. Ruckelshaus & Ruckelshaus Bobbitt & O'Connor,* of Indianapolis, for appellees.

HUNTER, J.—The plaintiffs below, some of whom are appellants in this appeal, as representative citizens, voters and taxpayers in Pulaski County filed suit for an injunction against the defendants, appellees herein. The action below asked to have set aside and held for naught the comprehensive plan for the reorganization of the school corporations in Pulaski County and to have set aside and held for naught the establishment of the Western Pulaski County School Corporation, and to enjoin it and its individual officers from taking over any of the assets of the Pulaski County School Corporation, and to enjoin Pulaski County's School Corporation and its officers from turning over any of its assets to Western Pulaski County School Corporation. The trial was by the court without jury. The issues were formed on the plaintiffs-appellants' complaint, the cross-complaint of the defendant-appellant, Pulaski School Corporation, the defendant-appellants' answer to the complaint and the answer in denial by Western Pulaski School. Corporation to the complaint of plaintiff-appellant and cross-complaint of defendant-appellant, and the answer of the defendant-appellee, Western Pulaski School Corporation alleging the de jure existence of Western Pulaski School Corporation and compliance with the school reorganization act of 1959, as amended in 1961, and the replies to such affirmative answers by the plaintiffs and cross-complainants.

The judgment of the court below was that the plaintiffs on their complaint and the defendant, Pulaski County School Corporation, on its cross-complaint, were not entitled to the injunctive relief prayed for; that the restraining order previously issued by the court should be dissolved. The court properly did not render judgment on the affirmative answers alleging the de jure existence of the defendant, Western Pulaski School Corporation, since the deter-

mination of the de jure existence of a municipal corporation or title to office is not properly recognizable in a suit of equity. *State ex rel. McClure etc.* v. *Marion Sup. Ct. etc.* (1959), 239 Ind. 472, 158 N. E. 2d 264; *Landes* v. *Walls* (1903), 160 Ind. 216, 66 N. E. 679; *Felker* v. *Caldwell* (1919), 188 Ind. 364, 123 N. E. 794; *Parsons et al.* v. *Durand* (1898), 150 Ind. 203, 49 N. E. 1047. Separate and several motions for a new trial were timely filed by the plaintiff and cross-complainants, which motions were denied by the court. The various plantiffs and cross-complainants jointly, separately and severally moved the court for new trial and subsequently, by leave of the court, filed a new and supplemental motion for new trial and subsequently the cross-complainants filed an amended motion for new trial. Taking the motions collectively, we find that they all assign that the decision and judgment of the court is contrary to law; that the decision and judgment of the court is not sustained by sufficient evidence and as to certain special parties that the court erred in admitting evidence over the objection of the plaintiffs and cross-complainants; that the court erred in sustaining the objections to questions asked by the plaintiffs and cross-defendants and the questions asked in testimony offered by the plaintiffs and cross-complainants; that the court erred in overruling the cross-complainants' verfied motion to strike all the answers of certain defendants and cross-defendants and to render a judgment of injunction; that the court erred in excluding certain testimony of the cross-complainants' witness, one Ross Robertson; that the court erred in admitting certain testimony of Lamoin Nice, which said testimony is embraced in thirteen separate specifications of error in the motion for new trial of all of the plaintiffs.

On the 16th day of March, 1963, the court overruled the motion for new trial filed by the plaintiffs and cross-complainants.

The assignments of error are:

"1. The Court erred in overruling the amended and supplemental motion for a new trial of the Appellants, Lorin

Good, Harold Mahler, James Allen, Harold Hoover, Richard Thompson, Richard Fahler and Daniel Sayers.

"2. The Court erred in overruling the amended motion for a new trial of the Appellants, Pulaski County, School Corporation, (identical with the County Board of Education of Pulaski County, Indiana), and John S. Capper as the Treasurer of the Pulaski County School Corporation."

The appellants concede in their argument that the alleged errors presented in the various motions for new trial are substantially the same; that the basic theory of the complaint and cross-complaint are similar and the evidence presented applied almost equally to each and the principles of law were almost identical. The appellants then state for the purpose of the brief the argument of plaintiff-appellants and defendants-appellants will be combined.

The appellants concede that the assignment in their motion for a new trial to the effect that the decision of the court is not sustained by sufficient evidence raises no question, since this is an appeal from a negative judgment, rather the appellants present their entire argument under the assignment that the decision of the court is contrary to law. We feel that it is necessary to trace through the various proceedings leading from the original action of the County Committee up to the perfection of the appeal to this Court and we will set these proceedings out in narrative form.

The County Committee for the reorganization of school corporations of Pulaski County was created and the members were appointed; the Committee met and organized and after a series of meetings, several of which were public meetings, the plan as finally presented by a majority of the County Committee and approved required the creation of two school corporations, one to be known as the Western Pulaski School Corporation and the other as the Eastern Pulaski School Corporation; during the time the plan was being formulated, the Pulaski County School Corporation was the corporation operating in both areas and has continued to do so during

the pending of this action and appeal; later hearings were had on the plan and the State Commission then approved the plan.

The appellees in this cause applied for and secured an extension of time within which to file brief, in which petition the appellees were required to and did show that said appellees' brief would be on the merits and that all motions to dismiss had been filed. *Rule 2-16.* This rule, as far as it is binding upon the court, is set forth very clearly by the Supreme Court in the case of *Gamble* v. *Lewis* (1949), 227 Ind. 455, 85 N. E. 2d 629. The Supreme Court cited an opinion by this court—*Brodt* v. *Duthie* (1933), 97 Ind. App. 692, 697-698, 186 N. E. 893—in which case the word "merits" was defined in the following language:

> " 'The word 'merits' should be understood as meaning the strict legal rights of the parties, as contradistinguished from those mere questions of practice which every court regulates for itself, and from all matters which depend upon the discretion or favor of the court.' 5 Words and Phrases, First Series, page 4493, and cases cited. 40 C.J., p. 650."

The Supreme Court, using this case as authority, stated:

> "The appellee applied for and received an extension of time for the filing of his briefs. Rule 2-16 requires the petition to 'state facts showing that the court in which the cause is pending has jurisdiction and that the brief will be on the merits.' An objection that the evidence is not in the record does not go to the merits of the appeal, and by his petition for extension of time the alleged error was waived. *Brodt* v. *Duthie* (1933), 97 Ind. App. 692, 186 N. E. 893." *Gamble* v. *Lewis, supra,* at p. 459.

Following the case of *Gamble* v. *Lewis, supra,* this court, in very significant language in the case of *Biel, Inc.* v. *Kirsch* (1958), 130 Ind. App. 46, 49-50, 153 N. E. 2d 140, stated as follows:

> "The Supreme Court said in *Gamble* v. *Lewis* (1949), 227 Ind. 455, 85 N. E. 2d 629, 632: 'An objection that the evidence is not in the record does not go to the merits of the

appeal, and by his petition for an extension of time the alleged error was waived.' If the absence of the evidence from the record does not concern the merits of an appeal surely its absence from the appellant's brief could not be so considered. This court specifically held that an objection that the appellant's brief is not in proper form or does not comply with the rules does not go to the merits of the cause. (citing) *Brodt* v. *Duthie* (1933), 97 Ind. App. 692, 186 N. E. 893. We therefore conclude that the appellee has waived his right to the affirmance of the judgment herein because of defects in the appellant's brief and this case must be decided on its merits."

Therefore, considering this case on the merits, as we are permitted to do by reason of the holdings of this court and the Supreme Court, *supra,* the first major contention asserted by the appellants in their brief on the merits of this case[1] is that it is not legally possible for this plan to be put into effect and that the same cannot be implemented so that it can become operable. A Condensed Recital of the contents of the comprehensive plan is set forth in extensive substance in Appellants' Brief. The plan as finally adopted by a majority of the county committee and approved by the State Commission required the creation of two school corporations. One was to be known as the Western Pulaski School Corporation and the other was to be known as the Eastern Pulaski School Corporation. The Eastern Pulaski School Corporation was to include all of the territory over which the Winamac-Monroe Township School had jurisdiction and a part of the territory included within the Pulaski County School Corporation. The Western Pulaski County School Corporation was to include a part of the Pulaski County School Corporation, Gillam Township of Jasper County, and left out all of Richgrove Township and a part of Cass Township of Pulaski County over which

1. Rhetorical paragraph 16(b) of plaintiffs' complaint, p. 23, Appellants' Brief, Vol. I "(b) The Comprehensive Plan creating the WESTERN PULASKI COUNTY SCHOOL CORPORATION is arbitrary, capricious, unreasonable, uncertain, indefinite, incapable of being performed, unfair, unworkable and in violation of existing contractual rights and obligations." and the answer filed thereto.

the Pulaski County School Corporation previously had jurisdiction. At the time the plan was adopted, the Pulaski County School Corporation was the only corporation operating in both areas. The Pulaski County School Corporation had assets, students and liabilities in both areas.

It is provided within the plan in seventeen instances where assets and liabilities are to become the property of Eastern Pulaski County School Corporation. There are eleven instances where division is to be made of assets and liabilities between Eastern and Western as shown in the Condensed Recital of the Evidence in Appellants' Brief. There are eight instances where division was to be made of assets and liabilities between the proposed Western and Eastern with such division to be made by the superintendents of the proposed Western and Eastern. As shown in the Condensed Recital of the evidence in the brief, the statutory method to attempt to bring Eastern Pulaski County School Corporation into existence was the holding of an election in an area comprising the Eastern Pulaski County School Corporation area in May, 1962. The plan was defeated by the voters of that area by secret ballot by a vote of 2,242 to 933. The County Committee did not meet again until June 25, 1962. At that meeting it decided to do nothing, although the County Committee was fully aware the Eastern Pulaski County School Corporation had not and could not come into existence at the time of the final adoption of this comprehensive plan.

No provision is made in the comprehensive plan as to what would happen if Eastern Pulaski County School Corporation failed to come into existence.

It is interesting to note that in all of these cases of the attempted division of assets and liabilities in the plan that there was wide variance in the percentages providing that Eastern should pay 38% and Western would pay 62% of the obligations to the school buildings and

maintenance located in Jefferson Township of Pulaski County, and all other contractual obligations of all other personnel should be divided 53.8% to Eastern and 46.2% to Western. Since Eastern Pulaski County School Corporation did not come into existence it is impossible to implement and put the plan into operation. The plan is completely dependent upon the creation of Eastern Pulaski County School Corporation which plan was decisively rejected by the voters of that larger area of Pulaski County. This court has no authority to rewrite this plan. Pulaski County School Corporation is an entirely different unit and entity, different territory than that of the proposed Eastern Pulaski County School Corporation.

In arguments of counsel in support of an affirmance of the judgment below, they have sought to treat the Pulaski County School Corporation as the Eastern Pulaski County School Corporation which did not come into existence and which was an entirely different corporation as to geographical area or existence. The plan appears to be a unified whole which is not possible of implementation and carrying into effect because Eastern did not come into existence.

The effect of any affirmance of this judgment could not establish the de jure existence of Western Pulaski County Corporation and would lead to a multiplicity of other suits in an attempt to take from Pulaski School Corporation assets and property which are incapable of definition since there is no Eastern Pulaski County School Corporation.

This court is without power and authority to rewrite the plan and to make a division between the Pulaski County School Corporation and the Western Pulaski County Corporation.

Another reason why the plan is impossible of being implemented and put into operation as shown in the condensed recital of the evidence in Appellants' Brief is that such plan required a division of the school books' rental system with a value of more than $40,000. The uncontra-

dicted evidence as demonstrated by the testimony of George Gerichs and other witnesses, established the fact that the book rental system belonged to the Pulaski County School Corporation by reason of its purchase with private funds and not from public resources. The school book rental system of the Pulaski County School Corporation, the appellants herein, was derived by it from sources other than the state and may be held by it and by the terms of its acquisition and grant for such uses, and from which it cannot be diverted by the legislature, and it is the property of said school corporation and such school book rental system is protected by all the safe-guards from legislative interference possessed by individuals and private corporations. *Lucas* v. *Board of Commissioners of Tippecanoe County* (1873), 44 Ind. 524, aff'd by 93 U.S. 108, 23 L. Ed. 822.

Another very serious question which is raised on the merits by the appellants with proper citation of the statute verbatim relates to the provision wherein it is mandatorily required of the County Committee that they show the costs of the current and proposed programs of education at the public hearings required under the School Reorganization Law.[2] We are not dealing here with the interpretation of the school reorganization statute as such. Our decision here would not change or alter the provisions of the school reorganization laws as they existed under the original Act of 1959 or the amendments thereto in 1961. What we are called upon to

---

2. Sub-paragraph 39 of rhetorical paragraph 10 of cross-complaint, p. 60, Appellants' Brief, Vol. I "(39) Said approved plan and its adoption and approval are unlawful for the reason that the Pulaski County Committee for the Reorganization of School Corporations wholly failed to show within the same and to show at the public hearings conducted by it and by the State School Reorganization Commission the costs of the proposed programs of education as nearly as may be estimated." and the answer filed thereto.

Sub-paragraph 7 of rhetorical paragraph 10 of cross-complaint, p. 49, Appellants' Brief, Vol. I "(7) Said plan fails to show the cost of the proposed *proposed* program of education under the plan for the reorganization of school corporations *of Pulaski County and Gilliam* Township of Jasper County, as required by the enabling statute." and the answer filed thereto.

determine by the points made in the Appellants' Brief is whether a plan was adopted which was capable of inplementation and being put into effect with the additional serious questions as to whether the plan was legally adopted and the required statutory procedures followed in the adoption of the plan. The Supreme Court, in a school reorganization case, has very definitely laid down rules to be followed in cases where the plaintiff school corporations and plaintiff taxpayers question procedures taken contrary to law. In this case interpreting the school reorganization law—*State ex rel. Jones* v. *Johnson Circuit Court* (1962), 243 Ind. 7, 12, 181 N. E. 2d 857— the court stated the following rule:

> "The establishment of a community school corporation, as here under consideration, being a special statutory proceeding, the procedural requirements prescribed in the act must be strictly followed. The court has no authority to ignore such procedure or adopt a different method of procedure. *State ex rel. M. West Ins. Co.* v. *S. Ct. of Marion Co.* (1952), 231 Ind. 94, 100, 106 N. E. 2d 924, 927; *State ex rel. Gary* v. *Lake Sup. Ct.* (1947), 225 Ind. 478, 493, 76 N. E. 2d 254, 261 and cases cited therein."

The appellants cite, verbatim, parts of Sec. 28-6108 Burns' Indiana Statutes, 1948 Repl., Vol. 6, Pt. 2, 1962 Cum. Supp., which requires public hearings and notice to taxpayers and residents affected, and which requires that the County Committee shall show the costs of the current and proposed programs of education as nearly as may be estimated. Sec. 28-6108, *supra,* in its pertinent provisions is set forth below.[3] See also *State ex rel. Jones* v. *Johnson Circuit Court, supra.*

The County Committee failed to comply with the provisions of the above-mentioned section of the statute. This Committee

---

3. "*At the hearing the county committee shall explain the proposed reorganization plan, . . . and shall show the cost of the current and the proposed programs of education as nearly as may be estimated . . . In such hearing, any resident of the county or of any affected school corporation . . . may be heard with reference to the proposed changes . . .*" (Acts 1959, ch. 202, § 5(5), p. 451; 1961, ch. 231, § 1(5), p. 544.) (our emphasis)

resolved to establish a two-unit plan for Pulaski County ■ in the early stages of its work without a consideration of the studies and surveys they were required by statute to make. The briefs and transcript contain the transcribed testimony taken from a tape recorder, as well as the testimony of the various members of the County Committee— Mr. White and Lamoin Nice in particular, that it was impossible to make an estimate of cost of the proposed program of education. The words of the statute are plain and unambiguous that they must explain the costs of the *proposed programs of education as nearly as may be estimated.*

This statute, by its terms, along with all the other provisions of such statute, requires that the County Committee suggest programs of education and that the County Committee show the estimated costs of such proposed programs of education. The only reasonable inference to be drawn from the condensed recital of the evidence in the briefs is that this County Committee did not, at any time, estimate the costs of any proposed programs of education on their repeated statements that it was impossible so to do.

This statute was not followed and the legislative intention that it was mandatory clearly appears when the statute was later amended in 1963 so that it was not required to be done. Certainly, when the legislature requires that the public be shown estimated costs, the public is entitled to have those costs shown as required by the statute.

The entire record in this case, as shown in the briefs, discloses that the County Committee, in formulating this plan, acted outside the authority as provided by statute. *State ex rel. Jones* v. *Johnson Circuit Court, supra.* From the condensed recital of the evidence in the briefs, it is shown that the County Committee failed to do things mandatorily required by the statute. The County Committee failed to adopt its *Final Comprehensive Reorganization Plan within 18 months after the creation of said committee and submit two*

*copies of the same to the State Commission within said time.*
Burns' 1962 Cumulative Pocket Supplement, § 28-6109.[4]

The third major contention raised in the court below by un-contradicted evidence admitted without objection and the complaint must be deemed amended as to such evidence is that such evidence and the record show that the date of the County Convention was August 10, 1959, and the date of the *creation of the County Committee was August 11, 1959,* and that the organization and election of officers occurred on September 8, 1959, and that *the adoption of the Final Comprehensive Plan* and the filing of two copies of the same on *August 1, 1961,* was more than 23 months from the *creation of the County Committee* and more than 23 months from the date of the County Convention. *The request for extension of time* to the State Commission, as shown by the record, *was May 2, 1961,* which is *more than 20 months after* the *County Convention* and *more than 20 months after the creation of the County Committee. The statute must be followed. State ex rel. Jones* v. *Johnson Circuit Court, supra.*

The uncontradicted evidence shows that at that time the *State Commission did not act* upon such motion for extension of time, *but instead the Director of such Commission,* as an employee of same, *purported to give such extension* by letter, and he was without power or right to grant such extension

---

4. "The committee . . . shall thereupon adopt its final comprehensive reorganization plan, and, within ten (10) days after such adoption, but not later than eighteen (18) months after the creation of the county committee, shall submit at least two (2) copies of its comprehensive plan to the state commission: Provided, however, That if a county Committee encounters any difficulties in formulating its comprehensive plan for the reorganization of school corporations, through no lack of diligence upon the part of the committee, so that it is unable to submit its plans to the state commission within the eighteen (18) months specified, such county committee may make application to the state commission for extension of time in which to complete its comprehensive plan.

The state commission, in its discretion, and if the facts and circumstances warrant, may grant such extension as it may see fit: Provided, however, that in no case shall such extension be for a longer period than six (6) months." (Acts 1959, ch. 202, § 5(6), p. 451, 1961, ch. 231, § 1(6), p. 544.)

of time on behalf of the State Commission, as shown in the case of *State ex rel.* v. *Sloan* (1926), 197 Ind. 556, 151 N. E. 418. Other cases cited in Appellants' Brief are: *Bullock* v. *Billheimer* (1911), 175 Ind. 428, 94 N. E. 763; *State ex rel.* v. *Goldthait* (1909), 172 Ind. 210, 87 N. E. 133; *Keane* v. *Remy* (1929), 201 Ind. 286, 168 N. E. 10.

Therefore, pursuant to the statute, the State Commission had the exclusive duty of preparing such Comprehensive Plan upon the failure of the County Committee so to do. The County Committee lacked jurisdiction to submit a plan after the expiration of eighteen (18) months from the date of the County Convention without a valid extension of time from the State Commission. The County Committee lacked power to adopt this plan and it was within the sole jurisdiction of the State Commission to prepare such plan after the expiration of twenty (20) months. Burns' 1962 Cumulative Pocket Supplement § 28-6115(f) ;[5] *State ex rel. Jones* v. *Johnson Circuit Court, supra*; *McCreery* v. *Ijams* (1945), 115 Ind. App. 631, 59 N. E. 2d 133.

Furthermore, in connection with this case, we must be mindful of the decisions holding that all doubtful claims to power by governmental boards and agencies must be resolved against them. *Pittsburgh, etc., R. Co.* v. *City of Anderson* (1911), 176 Ind. 16, 95 N. E. 363; *Local 26, Natl. Bro. of Op. Potters* v. *City of Kokomo* (1937), 211 Ind. 72, 5 N. E. 2d 624.

Finally and in conclusion, the appellees have raised the question that this action was not timely filed by the appellants. The record before us reveals that in the fall of 1961 a petition was circulated in the area comprising the Western Pulaski County School Corporation asking that such corporation be formed without an election. Follow-

---

5. "The state commission shall make surveys and prepare plans for the reorganization of school corporations in any county in which the county committee fails or refuses to submit plans, records, reports, and other data as provided for in this act. . . ." (Acts 1959, ch. 202, § 6(3), p. 451.)

ing the circulation of the petition, the Clerk certified to the County Committee that more than fifty-five (55%) per cent of the eligible voters had signed the petition. On December 7, 1961 notice was published announcing that the corporation would come into being on January 1, 1962. The appellants' action was filed on January 5, 1962 and within the thirty (30) days provided by statute.[6] We therefore hold that the appellees' assertion is not sustained by the record, and that the appellants did file their action within time pursuant to the provisions of the statute.

For the reasons given herein, the judgment of the trial court is reversed and remanded for further proceedings not inconsistent herewith.

Prime, P.J., Carson, Faulconer, and Smith, JJ., concur.

Martin, J., participated and concurred in the adoption of this opinion prior to his death.

Mote, J., dissents with opinion in which Bierly, C.J., concurs.

---

6. "Community school corporation—Creation by petition.— . . . The Clerk shall establish a record of his certification in his office, and shall return the petition together with his certification to the county committee. If the certification or certifications received from the clerk or clerks disclose that fifty-five per cent (55%) or more of the registered voters residing within the boundaries of the community school corporation have signed the petition, the county committee shall publish in two (2) newspapers of general circulation within the boundaries of the community school corporation a notice stating that the steps necessary to the creation and establishment of the community school corporation have been completed, and setting forth (a) the number of registered voters residing within the boundaries of the community school corporation who signed the petition and (b) the number of registered voters residing within the boundaries of the community school corporation.

The community school corporation shall be created and come into being on July 1 or January 1 following the date of publication of said notice, whichever date is the earlier. In the event any public official shall fail to do his duty within the time prescribed in this section, this omission shall not invalidate the proceedings taken hereunder. No action to contest the validity of the formation or creation of a community school corporation under the provisions of this subsection (1), to declare it has not been validly formed or created or is not validly existing, or to enjoin its operation shall be instituted at any time later than the thirtieth day following publication of said notice." (Acts 1959, ch. 202, § 7(1), p. 451; 1961, ch. 302, § 1(1), p. 816.)

DISSENTING OPINION

MOTE, J.—I hereby dissent to the majority opinion and decision.

This was an action for injunction brought by plaintiffs in the trial court, who are some of the appellants herein, as representative citizens, voters, taxpayers and patrons of the schools in Pulaski County, Indiana, filed on January 5, 1962.

Appellants and others filed their complaint containing sixteen (16) rhetorical paragraphs and seven (7) paragraphs of prayer for relief. Inasmuch as the regular Trial Judge, Honorable Robert E. Thompson, was made a party to the action, he disqualified himself, and Honorable Russell Gordon, regular Judge of the 39th Judicial Circuit by appointment of the Supreme Court of Indiana, on March 3, 1962, qualified and served as Judge in the cause.

Also on March 3, 1962, defendants and cross-complainants, Pulaski County School Corporation, the same being the County Board of Education of Pulaski County, Indiana, and John S. Capper, Treasurer of said school corporation, filed their verified cross-complaint in eight (8) rhetorical paragraphs and prayer for relief, together with an undertaking by them for damages and costs which might accrue by reason of any restraining order and temporary injunction granted.

On the same date, to-wit: March 3, 1962, defendant Western Pulaski County School Corporation, filed its verified answer to the complaint in two (2) paragraphs, the first paragraph under Rule 1-3, and the second, containing eight (8) rhetorical paragraphs, together with the prayer, as follows:

"1. As to rhetorical paragraph 2, said defendant alleges that it is a community school corporation, duly established, and organized under the provisions of Chapter 202, Acts 1959 of the Indiana General Assembly, as amended.

"2. As to rhetorical paragraph 3, said defendant alleges that the appointment of school trustees mentioned therein was by the joint action of the Judge of the Pulaski Circuit Court of Pulaski County, Indiana, and of the Judge of the Jasper Circuit Court of Jasper County, Indiana.

"3. As to rhetorical paragraph 5, said defendant alleges that the comprehensive plan referred to therein states that the appointment of the first members of the Board of School Trustees should be made by the Judge of the Circuit Court.

"4. As to rhetorical paragraph 8, said defendant alleges that the notice therein referred to was published in the following newspapers of general circulation printed and published in Pulaski County, Indiana:

Pulaski County Journal, on December 7, 1961;

Francesville Tribune, on December 7, 1961;

Medaryville Herald, on December 7, 1961;

and that said notice was published in the Rensselaer Republican, a newspaper of general circulation, printed and published in Jasper County, Indiana, on December 6, 1961.

"5. As to rhetorical paragraph 8, said defendant alleges that Pulaski County School Corporation is the owner of no assets within the territory of Western Pulaski County School Corporation.

"6. As to rhetorical paragraph 9, said defendant alleges that the appointment therein referred to was by the joint action of Robert E. Thompson, Judge of the Pulaski Circuit Court of Pulaski County, Indiana, and Moses Leopold, Judge of the Jasper Circuit Court of Jasper County, Indiana.

"7. As to rhetorical paragraph 9, said defendant alleges that Pulaski County School Corporation is the owner of no assets within the territory of Western Pulaski County School Corporation.

"8. As to rhetorical paragraph 10, said defendant alleges that on January 5, 1962, said defendant made demand on the members of the County Board of Education of Pulaski County, Indiana, that the County Board of Education turn over to said defendant certain assets and properties.

"WHEREFORE, defendant, Western Pulaski County School Corporation, prays that plaintiffs take nothing by their complaint, and that said defendant recover its costs."

The Members of the Board of School Trustees of Western Pulaski County School Corporation, as defendants, jointly and severally, also filed on March 3, 1962, their answer to the complaint in two (2) paragraphs, the first under Rule 1-3, and the second, together with the prayer, substantially like the affirm-

ative Paragraph Two of the answer of defendant and appellee Western Pulaski County School Corporation.

To the same effect, and in substantial manner, the Honorable Robert E. Thompson, defendant and Judge of the Pulaski Circuit Court, likewise answered said complaint.

On the 8th day of March, 1962, the Members of the Board of School Trustees of Western Pulaski County School Corporation filed a joint and several verified plea in abatement to the cross-complaint of the County Board of Education of Pulaski County, Indiana, in which a complete history and background of the litigation were presented by specific statements therein set forth and by the exhibits thereto attached.

Likewise, on March 8, 1962, there was submitted to the trial court for hearing on an application for temporary restraining order against appellees, after a stipulation that their appearance therein would not serve as a waiver of their rights under their plea in abatement. This resulted in the issuance, on March 27, 1962, of a temporary restraining order, and on said date the plaintiffs (appellants) filed a verified second paragraph of complaint for injunction. Many subsequent pleadings were filed and, as appellants state in their brief, substantially agreed to by appellees, the issues finally were formed on:

". . . appellants' complaint and defendant-appellant's Pulaski County School Corporation's cross-complaint, defendant-appellant's answers to the complaint and cross-complaint and the answers in denial by Western Pulaski County School Corporation to the complaint and cross-complaint, and the answers of the defendant-cross-defendant-appellee Western Pulaski County School Corporation alleging their *de jure* existence and compliance with the School Reorganization Act of 1959, as amended in 1961 and the replies thereto by plaintiffs and cross-complainants. The relief sought by the plaintiffs below and the defendants and cross-complainants below, constituting the appellants herein, was substantially the same. In different ways the Plaintiffs and the cross-complainants challenged the action of the County Committee for the Reorganization of School Corporations of Pulaski County, Indiana, the action of the State committee for the Reorganization of schools and the appointment of the trustees for Western Pulaski County

School Corporation. Contentions were made by the plaintiffs and cross-complainants below, being the Appellants herein, that the comprehensive plan was illegal unreasonable, uncertain, unworkable, incapable of being performed and in violation of existing contractual rights and obligations. The issues challenge the right of Western Pulaski County School Corporation to organize and take over the administration of the Schools within the area encompassed by Western Pulaski County School Corporation and that the appointment of the trustees for said Western Pulaski County School Corporation be set aside, and the educational system of Pulaski County be continued to maintain the status quo until the legal existence and jurisdiction of the Western Pulaski County School Corporation is determined and adjudicated in a separate proceeding at law rather than in equity.

"Whether the Trial Court was justified in denying the Plaintiffs' prayer for injunctive relief and whether the Trial Court was justified in denying the cross-complainants' prayer for injunctive relief are the principal issues presented to this Court for review.

"Such issues presented upon the pleadings, and the evidence adduced at the trial, raise the following questions; whether the county committee and state commission followed the procedures as set forth in the School Reorganization Act of 1959, as amended by the Acts of 1961, in the formulation and adoption of the Comprehensive Plan and the public hearings thereon; whether the county committee at the time that it submitted its plan to the State Commission for the Reorganization of School Corporations had jurisdiction to present such plan for approval to the state commission under the provisions of the statute; whether the plan was legal and capable of being performed and put into effect, whether or not the provisions of the Comprehensive Plan as to the election of the Board of School Trustees of the proposed corporation were valid and pursuant to statute; whether the provisions of the Comprehensive Plan requiring a division and distribution of funds, monies, contracts, property and assets of the Pulaski County School Corporation were valid and authorized by the enabling statute, whether the Comprehensive Plan is illegal, incomplete, indefinite, and uncertain because of the failure to include and show therein provisions, data, surveys and reports required by the enabling statute or whether the County Committee acted arbitrarily, capriciously, unreasonably and unlawfully in the preparation and adoption of the Comprehensive Plan and in the conduct of the public hearings there-

on; whether the failure of the County Committee to make explanation in the plan at public hearings of the matters required by statute makes illegal the petition and the execution thereof and the proceedings for the creation of the Western Pulaski County School Corporation; whether the petitions filed in support of such plan complied with the enabling statute and the requirements set forth in the Comprehensive Reorganization Plan; whether the petition for the creation and establishment of the Western Pulaski County School Corporation is illegal because it made and contained additional, alternative and contrary provisions not authorized by statute or by the Comprehensive Plan; and whether the description of the area of the Western Pulaski County School Corporation was different in the petitions than in the Comprehensive Plan; whether the issue arising by reason of the evidence of the failure of the part of the plan at the election for Eastern Pulaski County under the Plan in question for a proposed Eastern Pulaski County School Corporation was so interrelated to the rest of the Comprehensive Plan as to the proposed Western Pulaski County School Corporation so that such failure of the plan as to the proposed Eastern Pulaski County School Corporation by election rendered the entire plan invalid and incapable of being carried out. Whether under a School Reorganization Plan requiring both the dissolution of an existing corporation and its subdivision into two proposed reorganized school corporations, that one of such proposed reorganized school corporations may become separately operational when the other proposed corporation is defeated at an election and the original school corporation is not dissolved; whether the defendant-cross-complainant below, appellant herein, Pulaski County School Corporation, is entitled to an injunction to maintain the status quo in the school government of its jurisdictional area until the unfounded and doubtful claims in its territory and function asserted by the defendant Western Pulaski County School Corporation are determined and adjudicated in a separate proceeding at law and not in equity."

The cause was submitted to the Honorable Russell Gordon, Special Judge by appointment of the Supreme Court, as aforesaid, without the intervention of a jury, who found for and entered judgment in favor of appellees.

Appellants filed a Motion for New Trial which was overruled, and now bring this appeal with an assignment of errors which, omitting the formal parts, is as follows:

## "ASSIGNMENT OF ERRORS

"The Appellants aver that there is manifest error in the judgment and proceedings in this cause, which is prejudicial to Appellants, in this:

"1. The Court erred in overruling the amended and supplemental motion for a new trial of the Appellants, Lorin Good, Harold Mahler, James Allen, Harold Hoover, Richard Thompson, Richard Fahler and Daniel Sayers.

"2. The Court erred in overruling the amended motion for a new trial of the Appellants, Pulaski County, School Corporation, (identical with the County Board of Education of Pulaski County, Indiana), and John S. Capper as the Treasurer of the Pulaski County School Corporation."

The two assigned errors are presented and considered together as appellants have done.

At the outset of our discussion relative to the merits of this appeal, we conclude that the entire matter is governed by the "School Corporation Reorganization Act" of 1959, Chapter 202, Acts of the Indiana General Assembly 1959, p. 451, *et seq.*, approved March 12, 1959, to be found in Burns' Indiana Statutes Annotated, § 28-6101, *et seq.* The amendment thereto of Section 5 thereof in 1961, and the amendments to the Act in 1963 are not considered as applicable to this appeal.

Objective reading, study and analysis of the said Act of 1959, in its entirety, will disclose an intent upon the part of the General Assembly "to encourage the development of school corporations which are of sufficient size to provide adequate educational opportunities for the youth of this State," Section 6 (3) (h), second paragraph, and under (f) thereof, "The State Commission shall make surveys and prepare plans for the reorganization of school corporations in any county in which the County Committee fails or refuses to submit plans, records, reports, and other data as provided in this Act. Reorganization plans so prepared shall be subject to ratification as provided in Section 7 hereof."

Furthermore, the title to said Act, and Section 1 thereof, together with the various other provisions of the enactment, make it abundantly clear that the expressed intent and the public policy therein established shall not be thwarted in accomplishment by legalistic road blocks.

Said title and said Section 1 are as follow:

"AN ACT to declare the policy of the state with regard to the reorganization of school corporations in order to establish and maintain a more uniform and thorough system of public schools; to prescribe the procedure by which reorganization of school corporations may be achieved; to provide for a State Reorganization Commission and for a County Reorganization Committee in each county in the state; to describe the powers and duties of such commission and committees; to set forth the responsibilities of existing state, county, and school corporation officers with respect to reorganization of school corporations; to guarantee to the electors of each school corporation the opportunity of participation in proposed reorganized plans; to provide for appeals from decisions of officers entrusted with authority under the provisions of this act; to define the administration of reorganized school corporations; to provide appropriations for carrying out the provisions of this act; and to supplement existing laws with the provisions of this act.

"SECTION 1. It is the sense of the Indiana General Assembly now assembled: That the establishment and maintenance of a general, uniform and efficient system of public schools is the traditional and current policy of the State of Indiana; that improvement in the organization of school corporations of the state will provide a more equalized educational opportunity for public school pupils, will achieve greater equity in school tax rates among the inhabitants of the various now existing school corporations, and will provide a more effective use of the public funds expended for the support of the public school system; that existing statutes with respect to the combination and the reorganization of school corporations are inadequate to effectuate the needed improvement; that modifications in the statutory provisions for the combination and the reorganization of school corporations provided in this act are necessary in order to assure the future maintenance of a uniform and efficient system of public schools in the state; that local electors have an interest in the boundaries of the school cor-

poration in which they reside and will exercise their privileges, as herein provided, to the end of establishing an efficient and economical reorganization plan suited to local conditions; that the commission, committees, and the public officers charged with authority under this act will perform their duties wisely in view of the objective of this act as set forth in the title of this act."

Whether the provisions of Section 5 of said Act were minutely followed in respect to the occurrence of particular events may be open to question; however,. there is no doubt but that the County Committee was established; that said County Committee did prepare and submit a preliminary comprehensive plan to the State Commission after studies, surveys and hearings, and the same was approved by the said State Commission. The significant, overriding fact that up to the time of such approval by said State Commission, as well as subsequently thereto, the record does not reveal that appellants or any other interested parties, aggrieved or otherwise, participated in any of the hearings conducted, voiced any objections to or made any suggestions for improvement of the plan, legal, equitable or otherwise. Appellants had opportunities so to do, as the record herein discloses: (1) at the duly advertised hearing before the State Commission, and (2) by later filing an action, as aggrieved parties, after ten (10) days notice but within thirty (30) days, in a court of competent jurisdiction, wherein and whereat they had statutory, vested rights to be present, to be heard to make suggestions, even demands for conformity with their ideas and notions, and to present their views concerning alleged defects in the plan, if any, and wherein and whereat they had the opportunity to submit the approximately seventeen (17) objections for consideration both by the State Commission and by the court of competent jurisdiction, as to constitutional validity, feasibility and workability, equities, implementation, alteration, improvements, etc. of said plan so adopted by said State Commission.

If it can be said that there was lack of nicety in the procedures followed up to the advertised hearing before the State Commission, it cannot be denied that appellants had the opportunity at said hearing to record their objections, and in the event of a refusal by said State Commission to heed any valid and legal objections presented at said hearing, and thereafter to pursue any such objections by filing the action at law provided in Section 8 (2) as follows:

"(2) Any party feeling aggrieved by the decision of the State Commission, after the hearing provided for in section 6 of this act, may appeal within thirty (30) days from such decision to the court of competent jurisdiction in the respective county on any question of adjustment of property, debts and liabilities among the school corporations involved. Notice of the appeal shall be given to the chairman or secretary of the County Committee ten (10) days before same is filed with the court. The court shall have power to determine the constitutionality and the equity of the adjustment or adjustments proposed, and to direct the County Committee to alter such adjustment or adjustments found by the court to be inequitable or violative of any provision of the Constitution of the State or of the United States. An appeal may be taken to the appellate court of the state in accordance with the rules of civil procedure of the State of Indiana.

"Any determination by the court with respect to the adjustment of property, debts and liabilities among the school corporations or areas involved shall not otherwise affect the validity of the reorganization or creation of any school corporation or corporations under the provisions of this act."

It will be noticed that the record is bare of any evidence, facts or even contentions on the part of appellants that they performed their statutory, and we think, exclusive remedies. It will be noticed also that appellants had the right of appeal to this Court.

Appellants have not availed themselves of the statutory procedures and remedies which, if exclusive, as we think they are, bar them from further action and particularly the remedy herein sought, to-wit: injunctive relief in a separate, inde-

pendent and wholly divorced action not prescribed or provided in the Act itself.

Should this Court countenance the position and contentions of appellants herein, we undertake to and do say that we would be leading the judicial arm and separate and distinct branch of government to the rape of legislative enactment by another separate and distinct branch of government.

After the duly advertised hearing before the State Commission held on August 3, 1961, and subsequent to the approval of the Comprehensive Plan by the State Commission, there was circulated in the area composing the Western Pulaski School Corporation, and in pursuance of Section 7, Chapter 202 of said Acts of 1959, a petition, conforming with the provisions of Section 7, asking that such corporation be formed, which said petition, as the record reveals, was signed by "55% or more of the registered voters residing within the boundaries of said School Corporation," one of appellees herein, as certified by the clerk of the court. Notices duly were published that said Western Pulaski County School Corporation would come into existence on January 1, 1962. On December 11, 1961, Judge Thompson of the Pulaski Circuit Court, Pulaski County, Indiana, as he was enjoined by the statute to do, appointed the members of the School Board of said Corporation who, on said January 1, 1962, met, took their oath and qualified as said members of said Board. See: *Patrons of Noble County School Corporation et al.* v. *School City of Kendallville* (1963), 244 Ind. 675, 194 N. E. 2d 718, particularly 719.

There does not appear to be any failure fully to execute and fulfill the statutory procedures in the formation of appellee Western Pulaski School Corporation and it seems apparent that it now exists, prepared and lawfully entitled as well as required, to perform the duties imposed upon it, except for an injunction rendered by this Court which now ought to be dissolved.

The said Acts of 1959 provided certain remedies and rights for those aggrieved in the decision and judgment of the trial court, in effect dissolving the temporary restraining order theretofore issued, and refusal at the conclusion of the trial of the issues formed to issue the injunction therein sought.

Appellants have attempted to raise many issues in this appeal which are not valid. The only question before this Court is whether said appellants are entitled to a reversal and to have an injunction.

The record does not disclose that a single person appeared before the County Committee or before the State Commission, even though duly advertised, to make or express a single suggestion or objection to the plan adopted and approved. Instead of pursuing their administrative remedies; instead of consulting with the County Committee and the State Commission, making suggestions and requests for any reasonable changes or alterations in the Plan, they waited, so far as the record discloses, until the appellee corporation came into existence on January 1, 1961, and then on January 5, 1962, started their action for injunction.

Not only did appellants, as well as others who allegedly may have been aggrieved by the Plan as submitted, have the right to be heard before the State Commission; they had a prescribed method for judicial relief as provided in said Section 8 of said Act of 1959, *supra*.

When the above quoted language contained in said Section 8 is analyzed and applied to the title of the said Act, and Section 1 thereof, it becomes wholly apparent that the procedures and methods employed herein by appellants do not conform to the exclusive methods provided to them.

The failure to employ the administrative remedies provided to them in the said Act; the failure to present and raise approximately seventeen (17) objections now expressed in their brief to the County Committee and then to the State Commission; the failure to give opportunity either to the

County Committee or to the State Commission to revise the Plan as prescribed by the said Act; the failure thereafter and within thirty (30) days, after ten (10) days of published notice, to appeal from the decision of the State Commission to a court of competent jurisdiction in the respective county on any question of adjustment of property, debts and liabilities among the school corporations involved, "that such court could determine the constitutionality and the equity of adjustment or adjustments proposed, and to direct the County Committee to alter such adjustment or adjustments found to be inequitable or violative of any provision of the Constitution of the State or of the United States" were fatal to the action filed below and now to this appeal.

A court of equity will not, cannot intervene to provide a remedy to appellants outside the established public policy and administrative procedures provided by statute. Neither will a court of equity intervene to assist a party shown by the record to have been guilty of laches, as in the case at bar.

It is not of novel character to require the exhaustion of administrative procedures, established by statute, before there may or can be a judicial review. *City of East Chicago* v. *Sinclair Refining Company* (1952), 232 Ind. 295, 111 N. E. 2d 459, and cases therein cited at (3), page 306. Long ago, and as stated in *Southern Ind. R. Co.* v. *Railroad Com., etc.* (1908), 172 Ind. 113, our Supreme Court pointed to the prevailing doctrine in this State as follows:

> "Nothing is better settled than, when the legislature specifically prescribes an adequate legal remedy, (as by the 1959 Act), that alone is open to the litigant. (Citations.)"

Appellants assert in their brief that appellees neither sought nor obtained an extension of time in which to complete the Comprehensive Plan. Section 5, paragraphs (5) and (6) of the Acts of 1959, pp. 457, 458, provides in part as follows:

> "(5) When any County Committee has prepared its preliminary written plans, maps, and charts for reorganiza-

tion of school corporations, it shall fix dates and places for hearings thereon and give notice thereof to all the residents of the school corporations affected and all interested parties. Such notice shall be given by the chairman of the County Committee by publication at least once in one (1) newspaper of general circulation published in the school corporation or corporations, and if no newspaper is published in the school corporation or corporations, then in a newspaper having a general circulation within the school corporation or corporations, at least ten (10) days but not more than thirty (30) days prior to the date set for such hearing.

"At the hearing the County Committee shall explain the proposed reorganization plan, with the advantages and any disadvantages resulting therefrom, and shall show the cost of the current and the proposed programs of education as nearly as may be estimated. A statement of the adjustment proposed for property, assets, debts and other liabilities shall be made. In such hearing, any resident of the county or of any affected school corporation in an adjacent county may be heard with reference to the proposed changes.

"(6) The Committee shall consider any suggestions made in the public hearing, and shall make any revisions or modifications in its written plans as it deems necessary and shall thereupon adopt its final comprehensive reorganization plan, and within ten (10) days after such adoption, but not later than eighteen (18) months after the creation of the County Committee, shall submit at least two copies of its comprehensive plan to the State Commission: Provided, however, That if a County Committee encounters any difficulties in formulating its comprehensive plan for the reorganization of school corporations, through no lack of diligence upon the part of the Committee, so that it is unable to submit its plans to the State Commission within the eighteen (18) months specified, such County Committee may make application to the State Commission for extension of time in which to complete its comprehensive plan.

"The State Commission, in its discretion, and if the facts and circumstances warrant, may grant such extension as it may see fit: Provided, however, That in no case shall such extension be for a longer period than six (6) months."

It is apparent, and the record reveals, that the County Committee made such "application to the State Commission for

extension of time in which to complete its Comprehensive Plan," and that "The State Commission, in its discretion" did grant such extension of time "as it may see fit." Furthermore, failing seasonably to object in the statutory manner prescribed by the Acts of 1959, is tantamount to a waiver, and this objection, as well as all the other objections which appellants first sought to present in the manner of filing a naked, independent, unprescribed complaint for injunction, neither could be countenanced by the trial court, nor by this Court on appeal. We conceived it to be our duty to uphold the decision of the trial court if error by the record is not demonstrated. In this case we have no hesitancy in concluding and deciding that the judgment of the trial court denying the injunction was the only decision that lawfully could be sustained by the record before us.

In *The Farm and Home Insurance Company* v. *Konradi* (1964), 136 Ind. App. 356, 199 N. E. 2d 726, this Court said:

> "In all cases appealed to this court there is a presumption that the trial court correctly decided the questions presented. It is incumbent upon the appellant to rebut this presumption in his brief by clearly showing that the trial court committed serious error which denied the relief to which he was entitled under the law, . . ."

This Court is not required to ascertain and determine whether the "Plan" is contained in the briefs in material substance or otherwise; neither is this Court required to determine whether appellees waived any defects in appellants' brief, technical or otherwise; nor is this Court required to ascertain or determine if the said "Plan" could have been improved if objections thereto had been timely made; nor finally whether the court of competent jurisdiction to which aggrieved parties might have appealed could or would have ordered changes or alterations to the said "Plan." The only question before this Court is whether under the Acts of 1959, and the exclusive procedures and public policy established thereby for the guidance of all the parties, an injunction prop-

erly would lie. *City of East Chicago* v. *Sinclair Refining Company, supra.*

In their brief, at pages 541-552, appellants make the following admissions:

"The method sought to be used to bring Western Pulaski County School Corporation into existence was the following of the statutory procedure whereby fifty-five per cent (55%) of the voters of the area could sign a petition and thus obviate the necessity of calling an election. A petition was prepared and circulated in the area comprising the Western Pulaski County School Corporation. It was presented to the Clerk of the Pulaski Circuit Court and the Clerk of the Jasper Circuit Court who issued certificates that the statutory petition contained the required number of signatures of registered voters. These petitions were presented to the Judge of the Pulaski Circuit Court with the request that trustees be appointed and the plan become effective January 1, 1962. Following the order entered by the Court the statutory procedure was followed and notice was published in the different newspapers on December 6 and 7, 1961."

"Acting pursuant to statutory authority a County Committee for the Reorganization of School Corporations of Pulaski County was created and members were appointed. The Committee met and organized. The Committee was made up of representative citizens of Pulaski County. Several members of the Committee were well acquainted with the organization of the then existing school corporations in Pulaski County and with the history of education in that community. They were men who were familiar with the educational needs of the County and they knew the way these needs had been met in the past. After a series of meetings, several of which were public meetings, the plan was presented for approval."

"The County Committee worked out the plan after intensive and prolonged study. Hearings were had and the plan was discussed. The State Committee approved it."

Appellants asserted in the trial court and now assert that the "Plan" cannot be implemented because the other unit contemplated by the said "Plan," to-wit: Eastern Pulaski County School Corporation, at an election in the area composing said proposed unit, held in May of 1962, the proposal was defeated

by the voters residing therein by a vote of 2,242 to 943. (Appellants' brief, Vol. II, pp. 550-551.)

We do not perceive that a majority of the voters in the Eastern unit, under the state of the record before us, have right of control over all the territory covered by the "Plan" and to permit them to do so would annihilate the legislative mandate as expressed in the 1959 Act. If the record herein were to disclose that some of the 2,242 voters had appeared, objected to the plan before approval by the State Commission, or even thereafter, had filed within thirty (30) days after ten (10) days notice, an action in the Pulaski Circuit Court, they would have had an opportunity to present a justifiable question for judicial determination. Absent this procedure and such action, these appellants had no right to injunction.

This Court should not have any concern in this appeal other than the validity of the trial court's judgment. It is either right or it is wrong.

Our answer and decision, based upon the record before us, the Acts of 1959, and the vast case law on the subject, is in the negative, and would affirm the judgment.

Bierly, C.J., concurs.

NOTE.—Reported in 210 N. E. 2d 100. Transfer denied in 220 N. E. 2d 274.