BRONNENBERG ET AL. *v.* CRAIG ET AL.

[No. 968A149. Filed November 30, 1970. Rehearing denied December 23, 1970. Transfer denied May 14, 1971. Rehearing on petition to transfer denied July 7, 1971.]

*Al S. Woolbert,* of Anderson, *Donald E. Bowen, Frank E. Spencer,* of Indianapolis, for appellant.

Paul E. Schrenker, Lawrence Booram, of Anderson, Riley M. Sharp, of Elwood, for appellee James Craig and others, as members of the Madison County Committee for the Reorganization of School Corporations. Theodore L. Sendak, Attorney General, Thomas L. Webber, Anthony Champa, Deputies Attorney General, for appellee, State Commission. William Byer, Robert W. Miller, of Anderson, for appellee J. E. Flanagan, as Mayor; Jack VanDyke and others, as members of the Common Council; Devar Litten and others, as members of the proposed Anderson Community School Corporation. William M. Evans, of Indianapolis for appellee, School City of Elwood.

SHARP, J.—Plaintiff-Appellants filed suit below in the Madison Circuit Court on March 11, 1965, seeking a declaratory judgment that the Anderson Community School Corporation does not have a valid legal existence. Changes of venue were appropriately taken, ending in the Hancock Circuit Court. The trial court entered special findings of fact and judgment in favor of defendant-Appellees, who are the Madison County Committee for the Reorganization of School Corporations, and others who have participated in the incorporating process of the Anderson Community School Corporation. Plaintiff-Appellants include residents, school patrons and taxpayers of the

affected school district, and the Metropolitan School District of Central Madison County itself.

The Anderson Community School Corporation was proposed Unit III in a five corporation reorganization plan of Madison County schools. That reorganization scheme included the following proposed school corporations:

1) Unit I    South Madison Community School Corporation;
2) Unit II   West Central Community School Corporation;
3) Unit III  Anderson Community School Corporation;
4) Unit IV   Alexandria Community School Corporation;
5) Unit V    Elwood Community School Corporation.

Unit II was defeated by the voters at the special election and did not come into existence. The other four Units won approval. Unit I and Unit IV are not named or involved in this lawsuit. Involved herein are the areas of Unit II, Unit III, and Unit V, all of which encompass or encroach upon part of the geographical territory of Appellant Metropolitan School District of Central Madison County. It is the Appellants primary contention that since Unit II did not come into existence, Unit III could not have legally come into existence because to do so would be to partially dissolve Appellant. This partial dissolution of Appellant is, it is contended, not possible under the terms of *Good* v. *Western Pulaski County School Corporation* (1966), 139 Ind. App. 567, 210 N. E. 2d 100, trans. den. with opinion, 247 Ind. 699, 220 N. E. 2d 274.

The Appellees assert the question is not precisely whether Appellant Metropolitan School District of Central Madison County can be partially dissolved, but rather whether the Anderson Community School Corporation, Unit III, was unalterably tied to a plan of action in combination with the Unit II which failed to come into existence. It is submitted by Appellees that Unit III was *not* so tied to Unit II, and hence the prohibition of *Good* v. *Western Pulaski County School Corporation, supra,* does not apply.

The facts of the *Good* case are similar to the case at bar.

As here, the old school corporation which was to have been dissolved sought relief against one of the two proposed new school corporations which were to divide its territory, property and obligations. In *Good,* as here, one of the proposed new school corporations had failed to win voter approval and clearly did not come into existence. The old school corporation argued that the plans of the proposed new school corporation which did win voter approval were inoperable because they assumed the other proposed school corporation would be accepted by the voters, made a division of assets and liabilities based on this assumption, and made no provision for alternative plans if one of the proposed corporations failed. In agreeing with the old corporation, this court stated at 574 of 139 Ind. App.:

> "It is provided within the plan in seventeen instances where assets and liabilities are to become the property of Eastern Pulaski County School Corporation. There are eleven instances where division is to be made of assets and liabilities between Eastern and Western as shown in the Condensed Recital of the Evidence in Appellants' Brief. There are eight instances where division was to be made of assets and liabilities between the proposed Western and Eastern with such division to be made by the superintendents of the proposed Western and Eastern. As shown in the Condensed Recital of the evidence in the brief, the statutory method to attempt to bring Eastern Pulaski County School Corporation into existence was the holding of an election in an area comprising the Eastern Pulaski County School Corporation in May, 1962. The plan was defeated by the voters of that area by secret ballot by a vote of 2,242 to 933. The County Committee did not meet again until June 25, 1962. At that meeting it decided to do nothing, although the County Committee was fully aware the Eastern Pulaski County School Corporation had not and could not come into existence at the time of the final adoption of this comprehensive plan.

> No provision is made in the comprehensive plan as to what would happen if Eastern Pulaski County School Corporation failed to come into existence.

> It is interesting to note that in all of these cases of the attempted division of assets and liabilities in the plan that

there was wide variance in the percentages providing that Eastern should pay 38% and Western would pay 62% of the obligations to the school buildings and maintenance located in Jefferson Township of Pulaski County, and all other contractual obligations of all other personnel should be divided 53.8% to Eastern and 46.2% to Western. *Since Eastern Pulaski County School Corporation did not come into existence it is impossible to implement and put the plan into operation. The plan is completely dependent upon the creation of Eastern Pulaski County School Corporation* which plan was decisively rejected by the voters of that larger area of Pulaski County. This court has no authority to rewrite this plan. Pulaski County School Corporation is an entirely different unit and entity, different territory than that of the proposed Eastern Pulaski County School Corporation.

In arguments of counsel in support of an affirmance of the judgment below, they have sought to treat the Pulaski County School Corporation as the Eastern Pulaski County School Corporation which did not come into existence and which was an entirely different corporation as to geographical area or existence. The plan appears to be a unified whole which is not possible of implementation and carrying into effect because Eastern did not come into existence.

The effect of any affirmance of this judgment could not establish the de jure existence of Western Pulaski County Corporation and would lead to a multiplicity of other suits in an attempt to take from Pulaski School Corporation *assets and property which are incapable of definition since there is no Eastern Pulaski County School Corporation.*" (Emphasis Supplied)

The above quoted reasoning was relied upon by our Supreme Court when it, in denying transfer, said:

". . . . Under this particular plan, we agree with the opinion of the Appellate Court that it was legally impossible for one of the two proposed school corporations to come into existence without the other—particularly where it appears that there is no reasonable chance that the other corporation can come into existence. For this reason, we hereby deny transfer of this cause from the Appellate Court." (247 Ind. at 700, 220 N. E. 2d at 274)

We believe the Supreme Court focused upon the plans of the proposed Western Pulaski County School Corporation, and its

degree of mutual dependence upon the proposed but defeated Eastern Pulaski County School Corporation in denying transfer as opposed to basing its decision upon the illegality of partially dissolving the original school corporation. This belief is buttressed by noting the Appellate Court opinion in *Good* does not speak in any way of such a partial dissolution of the existing school corporation being illegal, and the Supreme Court opinion does not speak to this point either. We hold, therefore, that whether or not Appellant Metropolitan School District of Madison County may remain in existence but be diminished in assets, liabilities and territory is not the legal question before this court because such cannot invalidate the de jure existence of the Anderson Community School Corporation under the terms of the *Good* case.

We must examine the plans of the Anderson Community School Corporation, Unit III, to determine if those plans are dependent upon the coming into existence of the West Central Community School Corporation, Unit II, within the meaning of the above quoted language from *Good* so as to make the plans of Unit III impossible to implement.

The complete plans of the Anderson Community School Corporation, as set forth in Appellants' brief, reveal no mention of the proposed West Central Community School Corporation, Unit II. Those parts of the Unit III plans which pertain to the taking over of school assets and obligations its geographical area encompasses are as follows:

"The Anderson Community School Corporation, consisting of the previous school corporations of Anderson City, Anderson Township, Richland Township, Union Township, shall assume all obligations incurred by the previous school corporations.

The Anderson Community School Corporation shall pay to Union Civil Township, located therein, which has issued school aid bonds, prior to the due date thereof, amounts sufficient to pay principal and interest on such school aid bonds.

Where the entire former school corporations (Union School Township, Richland School Township, Anderson

School Township, and School City of Anderson) become a part of the Anderson Community School Corporation, all obligations including current teacher contracts, permanent teacher contracts, accumulated sick leave, current school bus contracts from the former school corporations, general obligation school bonds, temporary school loans, school holding corporation bonds, and Veterans Memorial Fund loans shall become the obligation of the Anderson Community School Corporation.

All assets including lands, buildings, investments, working cash balances, cumulative fund balances, and monies in process of collection during the current budget period of the former school corporation absorbed in entirety (Union, Richland, and Anderson Townships and City of Anderson) by the Anderson Community School Corporation shall be transferred to the proposed Anderson Community School Corporation. All assets listed above from a part of the former school corporation, Section 36 of Lafayette Township, absorbed by the Anderson Community School Corporation shall be transferred to the Anderson Community School Corporation on *a student per capita basis according to the division of enrollment at the time the Anderson Community School Corporation is officially created.* The residence students (approximately ten students) in Section 36 of Lafayette Township shall attend schools in the Anderson Community School Corporation." (Emphasis Supplied)

We note the Anderson Community School Corporation plans call for a division of assets and liabilities on a "student per capita basis" when a former school unit is absorbed in part only. This per capita division of assets is related to geographic areas and not to the proposed West Central Community School Corporation, Unit II, which failed to come into existence. The plans are then not impossible to implement because the assets and property are capable of identification without reference to the defeated Unit II, and because they do not call for participation in any way from Unit II. There is absolutely no dependency upon Unit II by the Unit III Anderson Community School Corporation as distinguished from the situation in *Good.* Therefore we hold that the failure of the proposed West Central Community School Corporation to gain voter approval and come into existence is

no bar to the de jure existence of the Anderson Community School Corporation.

Appellants also challenge the existence of the Unit III Anderson Community School Corporation by complaining of alleged errors in the formative procedure followed by the Madison County Committee for the Reorganization of School Corporations and the State Commission for the Reorganization of School Corporations with reference to another corporation in the five corporation reorganization scheme, Unit V, the Elwood Community School Corporation. By attacking Unit V, Appellants seek to show Appellees did not comply with the provisions of the Acts of 1959, ch. 202, § 5(2), p. 451, as amended and as found in Burns' Indiana Statutes Annotated § 28-6105 (1968 Cum. Supp.) which requires the final county reorganization plan to provide for the reorganization of all areas of the county before the final plan may be accepted. By proving Unit V faulty Appellant desires to shatter the validity of the sister unit, the Anderson Community School Corporation, as it would be part of a faulty final plan and hence invalid. However, as a matter of law, the attack on Unit V (and through it, the attack on Unit III) must fail by virtue of what we have said in two recent cases with reference to challenges to formation procedures and to the jurisdiction of the circuit courts to call the special elections attempted *after* the special election has shown voter approval to such proposed new school corporations. Here the special election was held February 9, 1965, and the complaint filed March 11, 1965.

In *Phillips* v. *Stern* (1969), 145 Ind. App. 628, 252 N. E. 2d 267, 277 (trans. den.) this court stated:

"Assuming as true, for purposes of testing the complaint for want of facts stated, the above alleged facts, we feel, as did the trial court, that as a matter of law, appellants are not entitled to a trial upon the allegations of their complaint. The complaint herein reveals that the Lake Central School Corporation purports to assume corporate existence pursuant to adoption, by the voters, of a partial plan on November

8, 1966. Appellants filed this suit to contest the creation of said corporation on December 8, 1966. It is quite pertinent that those remedies provided by Burns' § 28-6118, could be used in such a manner as to enforce compliance with the procedural requirements of the School Corporation Reorganization Act of 1959, namely in a suit to prevent or restrain a violation thereof. Appellants here seek to set aside the ultimate result because of alleged defects in the means used to obtain that result. We therefore feel, that it is likewise pertinent to assess appellants' position herein in light of the fact that a majority of the voters expressing a concern (by means of the ballot), voted in favor of adopting the partial plan and that appellants, apparently in the minority, seek to overturn the will of the majority by virtue of certain defects allegedly occurring in the creation and formation of the Lake Central School Corporation.

Alleged defects numbered 1, 2 and 3 above pertain to the election process and serve to raise the Circuit Court's failure to comply with the provisions of Burns' § 28-6118. Appellants contend that the provisions of the School Corporation Reorganization Act of 1959, relating to an election upon the partial plan are mandatory and that a failure of compliance therewith, renders the assumed corporate existence invalid. The Supreme Court of Indiana in *State ex rel. Harry* v. *Ice* (1934), 207 Ind. 65, 191 N. E., at page 71, stated:

'It is well settled that provisions of the election law viewed as mandatory, if enforcement is sought before election in a direct proceeding, will be held directory only in a proceeding after the election unless an essential element of the election is affected, or there is an express declaration in the statute that the act is essential to a valid election, or that its omission will render the election void. The purpose of the law and the efforts of the court are to secure to the elector an opportunity to freely and fairly cast his ballot, and to uphold the will of the electorate and prevent disenchisement. In the absence of fraud, actual or suggested, statutes will be liberally construed to accomplish this purpose. Jones v. State ex rel. Wilson, supra; Blue v. Allee (1916), 184 Ind. 302, 111 N. E. 185.'

See also: *Cave* v. *Conrad* (1940), 216 Ind. 304, 24 N. E. 2d 1010; and, *Brown* v. *Grzeskowiak* (1951), 230 Ind. 110, 102 N. E. 2d 372.

Appellants, by a timely petition for a writ of prohibition, could have, before the election, secured compliance by the

Circuit Court with the provisions of the statute relating to elections. *State ex rel. Jones* v. *Johnson Circuit Court.* [243 Ind. 7, 181 N. E. 2d 857 (1962)]

*The complaint herein contains no allegations of fraud nor even language intimating same. As the election was instituted below, after the election and not in an attempt to compel compliance with the provisions of the statute and as the defects alleged are asserted in retrospect, the same are not grounds for declaring a lack of legal existence."* (Emphasis supplied)

No allegations of fraud or the like are contained in these Appellants' Complaint or in the record in any manner.

In *Mays* v. *Parker* (1970), 147 Ind. App. 81, 258 N. E. 2d 666, 681, this court seemingly broadened the language of *Phillips* v. *Stern* to include all formation procedure attacks brought *after* the special election. This language was, however, not a broadening of *Phillips* v. *Stern* but merely recognition of the fact that any attack upon new school corporation formation procedures is also a challenge to the special election as such special election approving a new school corporation would be meaningless if a prior error in formation invalidated the corporation. The policy of *Phillips* v. *Stern* is also applicable to the alleged defects in school formation procedure when such complaint is made after voter approval has made clear that the complainants are a minority and that methods of compelling compliance with the technical and exacting formation procedure statutes have not been utilized despite their availability. Appellants' retrospective attack upon the special election and formation procedures of Unit V cannot destroy the de jure existence of the Unit III Anderson Community School Corporation.

Therefore, Appellants have shown no basis for reversal of the trial court's affirmation of the de jure existence of the Anderson Community School Corporation, and the judgment below must be, and hereby is, affirmed.

Hoffman and Pfaff, JJ., concur; White, J., not participating.

NOTE.—Reported in 264 N. E. 2d 105.